### GEORGE W. JOY *vs.* WINNISIMMET COMPANY.

In an action against a ferry company for personal damage caused by negligence, it appeared that the plaintiff, while leaving the ferry-boat in the dark with a crowd of passengers, was hurt by being caught between the boat and the slip, and that a chain used to prevent the premature egress of passengers had, though not by the servant having it in charge, been removed before the boat was secured. *Held*, that there was no evidence of the defendant's negligence.

TORT, against the defendant corporation, as a common carrier of passengers, for a hurt received by the plaintiff while leaving the defendant's ferry-boat. At the trial in the Superior Court, before *Pitman*, J., the plaintiff testified that he was nineteen years old ; that on the evening of February 20, 1872, he took the half past six o'clock boat at Boston on the defendant's ferry to go to his home in Chelsea, and paid his fare ; that the boat reached the Chelsea side at a quarter of seven ; that it was pretty dark ; that he was standing, as nearly as he could judge, in the middle of the boat ; that there was a crowd of other men ahead of him and behind him ; that they were all going off ; that there were as many as fifty went off ahead of him ; that the chain was dropped and he undertook to go off with the others ; that when he stepped off he got his foot down between the drop and the boat, and the drop came down and the boat came up and crushed his foot ; that there were a lot of passengers upon the drop while his foot was underneath ; that they called to the captain to back the boat, and he did so ; that he supposed the chain that fastened the boat was hooked up when he went off, but he could not say certainly ; he was not near enough to see.

On cross-examination, he testified that he did not look to see whether the drop was down before he stepped off ; that he was on the part of the boat where the carriages usually go ; that he did not notice whether the chain was down where the passengers go ; that he did not know who took down the chain across the carriage-way, and did not see it taken down ; that he knew that the boat was customarily fastened by winding chains over a wheel, but did not look to see whether it had been so fastened ; that the boat had got in on one side but not on the other, and

had not swung round; that he did not look to see whether the drop was down or not, and that he did not notice and stepped into the space cut out of the front of the boat that the drop falls into.

· The plaintiff called one Charles H. Jones, who testified : " I live in Chelsea ; my place of business is in Pearl Street, Boston ; am accustomed to go over on this boat every night and morning ; was on the boat on the night in question ; came over on the half past six boat from Boston, and when we got to the other side, as I usually do, and as nearly all the men do, I stepped from the door of the cabin up on to the middle part of the boat, which is considerable higher, and walked up, which is the custom ; everybody goes off there, and I went off with the rest; I went off from the middle of the boat ; I stood in the middle of the boat and felt the boat strike against the end of the drop ; it was quite dark at the time ; the lamps on the end were lit, but they threw most of their light out towards the sea, instead of between themselves ; I walked forward with the crowd ; I did not know any of the people that were standing beside me ; I did not notice anybody in particular, but slowly walked off ; I noticed the chain on the left hand side of the boat, — on the left hand side as you go off, — that the boat was hooked to the ferry on that side ; there is a wheel similar to the pilot wheel on a vessel, and that revolves an axle that the chain is fastened to, and turning that round shortens the chain and holds the boat in position ; it tightens the boat up ; that is on the pier, and has a chain that fastens into a large eye in the bow of the boat ; that chain was hooked ; there was a chain which runs across the bow of the boat to prevent the passengers going over; that chain was dropped ; I walked slowly forward with the crowd ; the boat was in and fastened ; I scuffed slowly along, as I· couldn't see through the people in front of me ; they were moving slowly ; I walked off, and had just got on to the drop, and I saw somebody behind me step down and stop, and I turned back and heard the young man groan ; I saw at once he had got between the boat and the drop in some manner, and I immediately yelled to the pilot to back the boat, and several other people did at the same time ; I heard the bell strike

for the boat to back, and the boat did back; I took hold of him on one side, and somebody took the other side, and laid him on the drop, and took hold of him more comfortably and laid him on the settee in the waiting room; in the daytime frequently one side only of the boat was hooked — the left side, going off." The witness described the bow of the boat, with the drop, chains and hook, by a sketch.

The plaintiff also called one Sylvanus P. Reddy, who testified that he was on the boat; that Joy was standing just in front of him; that some forty or fifty passengers passed out before Joy started; that when they got to the edge of the drop he saw the chain on the left hand side was hooked, and then added, " I am a little before my story; when the boat came in, as she came she crushed against the drop, and when she slid out again they hooked the chain on the left hand side; the chain was hooked on the left hand side that holds the boat to the drop; she went off again somewhere from about two to five feet; Mr. Joy made an advance to go through the same as the rest; I was directly behind, and the first thing I saw was him falling, and I just saved myself from falling over him; I took hold of him and picked him up; the drop had fallen on to his foot; the chain was down in the middle of the boat; as to the sides I couldn't say."

It further appeared that there were ways for foot passengers on the sides of the boat, and a carriage-way in the centre; that on reaching the landing the boat is secured by chains to the wharf, and that a drop is then lowered from the wharf upon the carriage-way of the boat into a jog, in the front of which it so fits that the surface of the drop is upon a level with the surface of the remainder of the carriage-way; that the passage-ways from the boat are secured by chains.

A witness called by the defendant, and not contradicted, testified that it was his duty to fasten the boat and then to remove the chains; that at the time of the accident he had not finished securing the boat, and had not let down the chain across the carriage-way, but did not know whether it was down or not.

It was admitted that there had been for many years previous to the accident, and that there was at that time, a large sign over

the drop, so placed as to be plainly seen by persons passing from the boat, cautioning passengers against leaving the boat before it was secured ; and the plaintiff did not deny having seen the sign.

The defendant, in addition to instructions as to care on the plaintiff's part, which have now become immaterial, asked the court to instruct the jury that the plaintiff had introduced no evidence upon which he was entitled to recover. The court declined to give the instructions requested, and the jury having returned a verdict for the plaintiff, the defendant alleged exceptions.

*G. O. Shattuck & O. W. Holmes, Jr.*, for the defendant.

*S. J. Thomas*, for the plaintiff. It cannot be said with truth, in this case, there was no evidence for the jury. There was evidence that when the plaintiff left the boat it was dark. There was a crowd of men before and behind him. All were leaving. Fifty had already gone off ahead of him. The chain was let down. The boat was fastened, in the way that was not unfrequent when passengers were leaving. There was no opposition. Nobody called to him or to others not to leave. In short, he was leaving in the usual way. As he was stepping on to the landing, with all those passengers also in the act of leaving, with no word of caution, the managers of the boat let the drop fall. He followed the usual sign. The jury have found that the defendant, by its conduct, gave the plaintiff reason to suppose the boat was secured.

WELLS, J. There was an absolute failure of proof that the defendant was in fault. The evidence tended to show that the boat had struck the wharf and was secured upon one side, but had not swung to so as to be secured at the other side. The drop had not been lowered to the passage-way for carriages, by which the plaintiff attempted to leave the boat. The passage-ways from the boat were secured by chains. To make the defendant liable for his injury, the plaintiff relies upon the fact that the chain across the carriage-way was down when he attempted to pass it. But the burden was on him to show that it was down by some fault of the defendant. He offered no proof

beyond the fact itself, it appearing that some fifty persons had pressed forward and passed the space between the boat and the drop, in advance of him. On the other hand, the person whose duty it was to fasten the boat and then remove these chains, testified, without contradiction, that at the time of the accident he had not finished securing the boat, had not let down the chain across the carriage-way, and did not know whether it was down or not. The obvious inference from all the circumstances is, that the chain was let down improperly by some of the crowd of persons who were in haste to leave the boat before it could be safely secured to the landing. The plaintiff owes his misfortune to the conduct of these persons, and not to any fault or negligence, which he has shown, on the part of those in charge of the boat.

It becomes unnecessary, therefore, to consider the question of the plaintiff's want of care, as presented by the several rulings prayed for at the trial. *Exceptions sustained.*