## ELLEN JONES *vs.* GRANITE MILLS.

Suffolk.   Jan. 3, 1877 ; Jan. 4. — Dec. 24, 1878.

In an action by an employee against a manufacturing corporation, for personal injuries received while endeavoring to escape from its mill, which was on fire, it appeared that the fire was caused by the heating of a bearing in one of the machines used in the mill, and that it might have been readily extinguished when first discovered; that the defendant had a cistern, with pipes leading to each story of the mill, to which were attached lines of hose, but at the time of the fire the water did not run when attempted to be used. *Held*, in the absence of evidence of any reason why the water did not run, that it must be attributed to the negligence of the fellow-servants of the plaintiff in failing to keep the apparatus in order, or in failing to put it in operation; and that the defendant was not liable.

If a manufacturing corporation has a mill properly constructed for its ordinary business, it is not, in the absence of a statutory requirement, responsible to an employee for not providing a means of escape from a fire, which is not caused by the negligence of the corporation.

TORT for personal injuries received by the plaintiff, while in the employ of the defendant, a manufacturing corporation, from the burning of its mill.

At the trial in this court, before *Lord*, J., the plaintiff offered to prove that the mill was a large building, five stories in height, with an attic; that each story contained one large room; that the only way of entrance to the several stories was through a tower on the outside of the mill, with stairs leading from story to story and coming to the platform at each story, and sufficient at all ordinary times to allow the operatives a passageway in and out; that this tower went up to the edge of the roof, to the sixth story; that on each side of this tower were fire escapes coming up from the ground to the fifth story, and there stopping, leaving the sixth story without any means of escape save by going down the tower or jumping from the gable windows of the room; that the plaintiff, a woman between twenty and thirty years old, had been at work at the mill about two years, in the upper room, spinning cotton ; that the spinning rooms are inflammable, dangerous, and require constant care and watching to prevent fire; that about seven o'clock in the morning of September 19, 1874, a fire broke out in the fourth story, caused by the heating of a bearing in one of the mules, which, when first seen, was about the size of the flame of a candle; that it was first discovered by

a man not in charge of that mule, who, on seeing it, ran to the end of the room, where there was a hose coiled up and hung upon a hook, having a nozzle to it and means for stopping and starting the water; that he uncoiled the hose, and turned the valve in the pipe leading from a cistern in the top of the building, from which another pipe led to each story, and ran with the hose toward the fire; that when he got near the fire, he opened the stop-cock on the hose-pipe to let the water come out, but none came; that he then dropped it and ran to the sink at the end of the room, and got a vessel of water and ran and threw it on the fire, but that did no good, the fire having got too much headway by that time; that no alarm up to that time had been made; but the alarm became general in that room, and the occupants all ran down out of the building; that in the fifth story the work was still going on, and the alarm was first given there by the fire drawing up the tower and the smoke coming into that room; that when the smoke rushed up into the sixth story the fire had so far progressed that escape by the tower was deemed impossible; that some tried it, but died, and some escaped by jumping; that the plaintiff, after trying the tower, ran back to the end of the room, and taking hold of a warp of yarn let herself down as far as she could, and then dropped the rest of the way, causing the injuries in question; that about twenty persons were either burnt or killed in jumping, and a great many wounded; that the hose and the apparatus for water were apparently, and to all outward appearances, in good order, and they had been, not frequently, but occasionally during the summer, tried to see if they were in order.

The plaintiff contended that it was the duty of the defendant to keep the apparatus for extinguishing fires in good order, to make safe and convenient ways of egress in case of fire in such a building, and to provide buckets with water in the rooms.

The judge thereupon reserved the case for the consideration of the full court. If a verdict for the plaintiff could be sustained on this offer of proof, with such inferences as the jury could legally draw, the case was to stand for trial; otherwise, the plaintiff to become nonsuit.

The case was argued in January 1877, and reargued in January 1878.

*B. F. Butler*, (*E. L. Barney* with him,) for the plaintiff. An employer is under an implied contract or warranty to his employees to use due care to adopt and maintain in fit condition suitable instruments, means, and appliances with which the services required are to be performed, and a suitable place in which such services can be performed in safety, the employee, on his part, exercising due care. *Cayzer* v. *Taylor*, 10 Gray, 274. *Snow* v. *Housatonic Railroad*, 8 Allen, 441. *Gilman* v. *Eastern Railroad*, 10 Allen, 233, and 13 Allen, 433. *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572. *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282. *Ford* v. *Fitchburg Railroad*, 110 Mass. 240. *Arkerson* v. *Dennison*, 117 Mass. 407. *Hill* v. *Winsor*, 118 Mass. 251. *Sullivan* v. *India Manuf. Co.* 113 Mass. 396. *O'Connor* v. *Adams*, 120 Mass. 427. *Kelly* v. *Norcross*, 121 Mass. 508.

In the present case, can the court say, as matter of law, that the defendant has used "all reasonable precautions for the safety" of the plaintiff, when, the first time an emergency requires the use of the appliances for extinguishing fire, they fail? The fact that they fail is *prima facie* evidence that they were insufficient.

The case should have been submitted to the jury, to find whether the place where the plaintiff was put to work, with the means of escape as they existed, was a proper and safe one, such as persons in like business, of ordinary prudence and foresight, would or ought to provide for their servants to work in.

By her implied contract, the plaintiff undertook to attend to a machine; while the defendant undertook to provide a safe building and safe appliances. Her attention, time and skill were to be applied to her duty in no greater ratio than the defendant's attention, time and skill were to be applied to its duty.

It was for the jury to say, whether it was or not the defendant's duty to see that buckets were placed in the room and kept full of water; that the hose and water-pipes, apparently ready for use, had water in them, and would answer when they were called upon, and whose fault it was that they were not in proper order, and that there was no water in them. It was sufficient for the plaintiff to show that they were not in order. It was for the defendant to show why the appliances were not in order and

fit for the use to which they were intended. The defendant had held out to the plaintiff, when they hired her, that they had sufficient hose properly placed for the extinguishment of fire, and properly supplied with water. When the moment came, her means of escape were cut off, these appliances were out of order and useless, and their uselessness was, upon the facts stated, the proximate cause of the injury.

*E. R. Hoar*, for the defendant.

ENDICOTT, J. In examining the questions presented in this case, it is important to ascertain the specific acts of negligence on the part of the defendant, relied on by the plaintiff in her offer of proof.

No question is made but that the defendant's mill was strong and well built, safe and convenient for the usual and customary work carried on within it. It had a single staircase, placed within a tower, affording means of communication between the different stories, and of entering and leaving all parts of the mill, which was ample and sufficient under all ordinary circumstances, taking into view the character of the business and the number of persons employed. Nor is it contended that the fire originated or was occasioned by the negligence of the defendant. It was caused by the heating of a mule bearing. All attempts to check it proved ineffectual. It spread rapidly; the tower filled with smoke and flame, so that escape by the staircase was impossible. There were no other means of exit, and the plaintiff, to avoid the danger, attempted to escape by a window, and fell to the ground, suffering severe injury.

The negligence imputed to the defendant is twofold; first, that no proper and sufficient means of extinguishing fire, if it should occur, were provided; and, second, that there were no sufficient means of escape in case of fire.

If the fire had occurred by the negligence of the defendant, a liability might have arisen, on the ground that a person injured while attempting to escape a danger caused by the negligent act of another may maintain an action for the injury. And it may be that, when fire is a casualty peculiarly incident to, and reasonably to be anticipated in, the prosecution of a particular business, the employer is bound to take proper precautions against its occurrence. It may also be his duty to have proper means and

appliances at hand to check it speedily when it does occur, on the ground that his failure to do so may bear upon the question whether he is responsible for the fire itself; and it might in some cases be difficult to draw the line between the precautions necessary to prevent its occurrence and those necessary to check it in the outset. But we are not called on to decide these points, for they do not necessarily arise in this case. For, even if we assume that such obligations rest upon the employer, no evidence was offered tending to show that the defendant failed to take proper precautions to prevent fire, or that the hose, tanks, and other appliances for extinguishing it were not all that under any circumstances would be required. The evidence offered was simply that the water did not run, when the fellow-servants of the plaintiff attempted to use it. This was not sufficient proof of negligence to charge the defendant. The defendant, in any aspect of the case, had done its whole duty when it supplied the proper appliances, the care and use of which must be necessarily entrusted to its servants. The failure of the water to run must therefore be attributed to the negligence of fellow-servants, either in failing to keep the apparatus in proper order or in negligently putting it in operation. *Cooper* v. *Hamilton Manuf. Co.* 14 Allen, 193. *Kendall* v. *Boston*, 118 Mass. 234. *Joy* v. *Winnisimmet Co.* 114 Mass. 63. *King* v. *Boston & Worcester Railroad*, 9 Cush. 112. *Allen* v. *New Gas Co.* 1 Ex. D. 251.

In either aspect of the question, the defendant is not liable. If the fire was not a casualty peculiarly incident to the business, and reasonably to be anticipated, then no obligation rested upon the defendant to guard against it in any way; if it was so incident to the business, the defendant having taken all proper precautions, and supplied all requisite appliances, which failed to work in the emergency through no fault on its part, then there is no liability to the plaintiff.

The other question is of a somewhat different character, for it cannot be said that failure to construct proper and additional means of exit from a mill in case of fire in any way contributed to the occurrence of the fire itself. All that can be said is, that, if they had been provided, some of the results that followed from the fire might have been lessened, alleviated, or prevented. And the narrow question is presented, whether a master is required

by the common law so to construct the mill, or so to arrange the place where his servants work, that they shall be protected from the consequences of a casualty for which he is not responsible. We know of no principle of law by which a person is liable in an action of tort for mere nonfeasance by reason of his neglect to provide means to obviate or ameliorate the consequences of the act of God, or mere accident, or the negligence or misconduct of one for whose acts towards the party suffering he is not responsible. If such a liability could exist, it would be difficult, if not impossible, to fix any limit to it. And we are therefore of opinion, that it is no part of the duty of a master to his servant, employed in a building properly constructed for the ordinary business carried on within it, in the absence of a statute requirement, to provide means of escape from it, or to have remedial agencies at hand to alleviate the results, or to insure the safety of the servant from the consequence of a casualty, to which his negligence does not directly contribute. The common law gives a remedy to a servant who is injured by the wrongful or negligent act of the master; the liability arises upon the doing of the act. But the common law goes no further; it does not provide a remedy when the master is not responsible for the act, on the ground that he has omitted to provide means to avoid its consequences. The master is not liable to the servant unless he has been negligent in something which he has contracted or undertaken with his servants to do, and he has not undertaken to protect him from the results of casualties not caused by him or beyond his control. See *Wilson* v. *Merry*, L. R. 1 H. L. Sc. 326.

It is no part of the contract of employment between master and servant so to construct the building or place where the servants work, that all can escape in case of fire with safety, notwithstanding the panic and confusion attending such a catastrophe. No case has been cited where an employer has been held responsible for not providing such means of escape. The construction and arrangement of manufactories and places where large numbers of persons are employed may be proper subjects of legislative action, and such an act has been passed since this catastrophe. St. 1877, *c.* 214.

We are of opinion that a verdict for the plaintiff on these facts could not be sustained; and, by the terms of the report, the entry must be                                    *Plaintiff nonsuit.*