CHARLES MULLAN *vs.* WISCONSIN CENTRAL COMPANY.

July 3, 1891.

Railway—Protection of Passengers from Violence.—It is the duty of a railway carrier of passengers to exercise the highest diligence reasonably practicable to preserve order on its trains, and protect passengers against violence, abuse, or injury from fellow-passengers. This duty is exercised under an implied police power to prevent an abuse of their privileges by passengers.

Same—Defendant Exonerated.—Evidence reviewed, and *held* not to show a breach of such duty by the defendant in this case.

Action brought in the district court for Ramsey county, to recover $5,000 damages for defendant's failure to protect plaintiff from an assault and battery by a fellow-passenger on one of its trains.' Trial before *Otis, J.,* who ordered a dismissal at the close of the evidence for plaintiff, who appeals from an order refusing a new trial.

*Kueffner & Fauntleroy,* for appellant.

*Lusk, Bunn & Hadley,* for respondent.

VANDERBURGH, J.   This action is brought against the defendant to recover damages for an assault committed upon plaintiff by a fellow-passenger on board of one of defendant's cars.   The plaintiff was a passenger, and entitled to protection as such.   Railway carriers of passengers are bound to exercise the highest care and diligence in the conduct and management of their business, to prevent accidents or injuries to passengers on their trains.   This is the general rule as applied to the ordinary discharge of their duties as carriers.   In respect to the danger of injuries from the misconduct of fellow-passengers, and the duty of enforcing proper police regulations, the obligation of the carrier is qualified or limited by the nature of its relation to the passenger.   It has no right either to refuse to receive or to expel a passenger, except for good cause.   It must exercise the greatest diligence consistent with its obligations to the public and all the passengers, and neglect no reasonable precaution to protect passengers from insult or injury from its servants or fellow-passengers; but as respects passengers there is no such privity between them and the carrier as to make the latter directly liable for their wrongful acts, *(Carpenter* v. *Boston & Albany R. Co.,* 24 Hun, 107,) and it can only interfere under an implied police power to prevent an abuse of their privileges as passengers.   It is held in general terms that the carrier is bound to exercise the utmost diligence in maintaining order and guarding the passengers against violence, from whatever source arising, which might reasonably be anticipated or naturally be expected to occur, in view of all the circumstances and the number and character of the persons on board.   *Flint* v. *Norwich & N. Y. Transportation Co.,* 34 Conn. 554.   If this duty is neglected without good cause, and a passenger receives injury which might have been reasonably anticipated or naturally expected, from one who is im-

properly received or permitted to continue as a passenger, the carrier is responsible. *Putnam* v. *Broadway & 7th Ave. R. Co.*, 55 N. Y. 108, 113; *Weeks* v. *N. Y., etc., R. Co.*, 72 N. Y. 50, 59. That is to say, the strict rule of duty is to be applied in view of the relation which the carrier sustains to all the passengers, and the circumstances of each particular case calling for its exercise.

In the case at bar, at the time of the assault upon plaintiff, his assailant was the only other passenger in the car. After the plaintiff and the conductor had adjusted a matter of difference as to his fare, and the conductor was passing down the car, the other passenger, plaintiff's assailant, made an insulting remark to plaintiff accompanied by an oath, which resulted in an altercation, which wound up by plaintiff calling the other a "liar," whereupon the latter "jumped right up upon the impulse of the moment," and "grabbed" plaintiff by the neck, and commenced striking him upon the head. As soon as plaintiff could get his arm loose, he struck his assailant "in the jaw," and the conductor interfered to part them, saying, "This has got to stop." It is evident that the struggle was very animated, and occupied but few seconds, and that the assault was sudden and unexpected; for the plaintiff says on his cross-examination: "I did not anticipate any trouble about the matter. He jumped up and grabbed me by the neck, and commenced knocking me in the face and head." Immediately after the plaintiff called him a liar, he says, "he jumped up in his seat, and jumped over at me and struck me." After the conductor interfered and separated the parties, plaintiff says there was no appearance of further trouble. The conductor took plaintiff down the aisle, and waited till the other party washed his face. His cheek had been cut by the blow which plaintiff gave him. After the plaintiff had washed the blood from his own face, his assailant, while passing along the aisle near where the plaintiff and the conductor were, suddenly turned and struck plaintiff again, in the mouth. The conductor interfered promptly again, grabbed hold of him, "and that ended it." The conductor took him into the baggage-car, and plaintiff saw him no more. The second assault was evidently unlooked for and without warning. We think the court properly dismissed the action upon the plaintiff's own evidence, for, apart from the fact that

the plaintiff must share the blame for the disturbance, we are unable to see wherein the conductor failed in his duty or neglected any reasonable precaution in the premises. It is true the plaintiff states in respect to the first assault that the conductor might have interfered sooner, but this appears to be a conclusion not borne out by the facts, which are particularly detailed by the witness in his testimony. The parties were very much excited, and the several blows must have passed between them in a very few seconds. It is not shown that the parties were not separated as promptly as the circumstances would admit, and it is sufficiently clear that the assault was in each case sudden and unexpected. The plaintiff failed to make a case for the jury, and the order denying a new trial is affirmed.