JOHNSON, Appellant, v. SNOW et al., Respondents.

St. Louis Court of Appeals, November 3, 1903.

1. Landlord and Tenant: FIRE ESCAPES. Under the first section of the Act of 1901, requiring the "owner, proprietor, lessee or keeper" of certain buildings designated, already erected, to provide fire escapes, such duty falls upon the person whose duty it was at common law to keep the premises in a safe condition, to-wit: tenants and lessees, and not the landlords.

2. ———: ———: ———. Under the fourth section of the Act of 1901, requiring that all buildings thereafter erected shall be provided with fire escapes, the duty of providing them falls upon the landlord.

3. ———: ———: ———. Where buildings used as private dwellings were leased prior to the taking effect of the Act of 1901, and by the lessees converted into a hotel, the lessees became liable to a guest who was injured by reason of failure to provide fire escapes under the act.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED.

*Ernest E. Wood* for appellant.

(1) The terms of statute make the fire escape a part of the building itself. It is therefore the duty of the owner to erect it where necessary. Under similar statutes the courts have held that it was the duty of the owner or owners to erect the fire escapes—even where the building was leased in its entirety for a term of years. Landgraf v. Kuh, 188 Ill. 490; Abraham v. Bank, 16 N. Y. St. 750; McLaughlin v. Armfield, 58 Hun 376; Weily v. Mulledy, 78 N. Y. 310; Pauly v. Steam Gauge and Lantern Company, 131 N. Y. 90; Gorman v. McArdle, 67 Hun 484; Huda v. American Glu-

cose Company, 154 N. Y. 474; Schwander v. Birge, 46 Hun 68; Sewell v. Moore, 166 Pa. St. 570; McAlpin v. Powell, 70 N. Y. 126; In re Fire Escapes, 2 Pa. Dist., 298; Rose v. King, 49 Ohio St. 213; Jetter v. N. Y. H. R. Co., 2 Abb. 458.    (2)    Under the general law of landlord and tenant, the exterior fire escape is such an improvement as the landlord is called upon to make.    11 Wood on Landlord and Tenant (2 Ed.), sec. 381, p. 841; 11 Shearman & Redfield on Negligence (5 Ed.), sec. 702a; 1 McAdam on Landlord and Tenant (3 Ed.), p. 440; Landgraf v. Kuh, 189 Ill. 490; Abraham v. Bank, 16 N. Y. St. 750; McLaughlin v. Armfield, 58 Hun 376.

*Collins & Chappell* for respondent.

(1)    There is no duty under the common law upon any one to equip a building with fire escapes.    Pauley v. Steam Gauge & Lantern Co., 131 N. Y. 90; Jones v. Granite Mills, 126 Mass. 84; Keith v. Granite Mills, 126 Mass. 90; Schmalzreid v. White, 97 Tenn. 36; 13 Am. and Eng. Ency. of Law (2 Ed.), p. 82, and note 1.    (2) Section 9037 of the Revised Statutes of 1899 has no application to this case.    (3)    Under the statute of Missouri, the duty of providing outside fire escapes is imposed only upon the person who has the control, possession and occupancy of the building.    Laws 1901, p. 219.    (a)    Statutes are not to be construed with reference to the common law.    Endlich on Interpretation of Statutes, sec. 127.    (b)    A penal statute is to be construed strictly.    Huies v. Railroad, 95 N. C. 434.    (4) The same rule of strict construction applies to statutes creating rights or fixing liabilities where none would otherwise exist, and to all statutes in derogation of the common law.    Wilbur v. Crane, 13 Pick. 284; Rogers v. Currier, 13 Gray 139; West v. Railroad, 63 Ill. 545; Townsend v. Wilbur, 88 Ill. 197; Williams v. Vanderbilt, 145 Ill. 238; Dean v. Railroad, 119 N. Y. 540; Sutherland on Construction of Statutes, 374.    (5)

The liability is several and not joint, and is imposed upon only one of the classes enumerated in the act. Schott v. Harvey, 105 Pa. St. 122. (6) At common law the duty to keep premises in a safe condition is upon the person in occupancy and control. Murray v. Richard, 52 Hun 613; Keating v. Stevenson, 21 N. Y. App.; 47 N. Y. 837; Railroad v. Walker, 45 Ohio St. 577; Kent v. Rogers, 44 Conn. 291; Proctor v. Railroad, 64 Mo. 112; Lee v. Smith, 42 Ohio St. 459; Burns v. Fuchs, 28 Mo. App. 279; Gibson v. Perry, 29 Mo. 247; O'Neil v. Flanagan, 64 Mo. App. 87. (7) The act can not and is not intended to apply to one who can not comply with its requirements. Maker v. Slater Mill & Powder Co., 1 N. E. 176. (8) Section 4 of the act itself indicates that it was the person in possession or control of buildings erected prior to the passage of the act upon whom the duty of erecting fire escapes was imposed. Wiley v. Mulleby, 78 N. Y. 310; Pauley v. Steam Gauge and Lantern Co., 131 N. Y. 90; Gorman v. McArdle, 67 Hun 484; Huda v. American Glucose Co., 154 N. Y. 474; McLaughlin v. Armfield, 58 Hun 376; Grant v. Slater Mill & Powder Co., 14 R. I. 380; McCulloch v. Ayer, 96 Fed. 178; Landgraf v. Kuh, 188 Ill. 484.

### STATEMENT.

Defendants are the owners in fee of lot 38 and part of lot 37, city block 986, city of St. Louis, upon which they, prior to July 25, 1899, erected two dwelling houses known as Nos. 2700 and 2702 Olive street. On July 25, 1899, they leased the buildings to William Gillham and Catherine Gillham for a term of ten years to begin September 1, 1899. The buildings were leased as one building to be used and occupied as a hotel and the lease provided that the buildings were not to be used or occupied for any other purpose without the written assent of the lessors, their heirs or assigns. It further provided that "all repairs deemed necessary by the lessees to be made at the expense of said lessees, with the con-

sent of said lessors and not otherwise.'' The said lessors, their heirs or assigns were, at all reasonable times and hours, to have the right to enter upon and inspect the state and condition of said premises. The lessees took possession of the premises under the lease on September 1, 1899, and from said date up to and including the ninth of February, 1902, engaged in the business of and were conducting a hotel or lodging-house in said premises as tenants under the lease.

On the ninth of February, 1902, Walter Johnson, plaintiff, was a lodger in the house and occupied an outside room on the third floor. About two o'clock on the morning of February 9, 1902, a fire broke out in the premises and Johnson made an effort to make his escape by the only pair of stairs in the premises leading from the third story to the ground floor, but was cut off from the stairway by the fire. The premises were unprovided with any outside fire escapes and to save himself from the flames, Johnson was compelled to jump to the pavement, a distance of about thirty feet. As a result of the jump he suffered fractures of the bones of his legs and was otherwise injured. To recover for these injuries this suit was brought.

The petition counts on the failure and negligence of the defendants as owners in fee of the premises to provide exterior fire escapes as required by an act of the Legislature approved March 27, 1901 (Laws 1901, p. 219.) Defendants denied that the obligation to provide an exterior fire escape was on them, and at the close of plaintiff's evidence moved for an instruction that plaintiff could not recover. The court denied the instruction and sent the case to the jury who returned a verdict for plaintiff and assessed his damages at $3,500. A motion for a new trial was filed by defendants which the court sustained on the ground that it committed error in refusing to grant defendant's instruction that plaintiff could not recover. From the order sustaining the motion for new trial plaintiff appealed.

BLAND, P. J. (after stating the facts as above).— The appeal presents but one question for discussion and solution, viz., whether or not defendants, under the evidence, were obliged by the Act of 1901 to attach an exterior fire escape to the building. The act is as follows:

"Section 1. It shall be the duty of the owner, proprietor, lessee or keeper of every hotel, boarding and lodging house, school house, opera house, theater, music hall, factory office building in the State of Missouri, and every building therein where people congregate or which is used as a business place, or for public or private assemblage which has a height of three or more stories to provide said structure with fire escapes attached to the exterior of the building and by stair-cases located in the interior of the building. The fire escapes shall commence at the sill of the second-story window and run three feet above the upper windowsill of the upper story with an iron ladder from the upper story to the roof, and when stopped off at the second story they shall be provided with an automatic drop-stair from the second story to the ground, to be held up by a weight and wire cable when not in use. School buildings, opera houses, theaters and church buildings, also hospitals, blind and lunatic asylums and seminaries shall each have a fire escape built solid to the ground and at the bottom inclosed with heavy wire or elevator inclosure up to eight feet in height, with a wire or iron door with knobs on the inside so that it can not be opened from the outside. In no case shall a fire escape run past a window where it is practicable to avoid it. All fire escapes required by this act must be of the kind known as stationary fire escapes. All buildings heretofore erected shall be made to conform to the provisions of this act.

"Section 2. No ladder fire escape shall hereafter be used, and the fire escapes herein provided for shall

be a stair fire escape, built on an angle of not more than fifty-five degrees, with proper risers and treads and shall be constructed so as to be placed on a blank wall, where practicable, with balconies to reach the opening doors or windows, as the case may be, and with one or more landings in each story and inclosed on the sides with wire bank rail running three feet on the same angle as the stairs.

"Sec. 3. All buildings three or more stories in height, used for manufacturing purposes, hotels, dormitories, schools, seminaries, hospitals or asylums, shall have at least one fire escape for every twenty to fifty persons for whom working, sleeping or living accommodations are provided above the second story, and all public halls which provide seating room above the first or ground story shall have such a number of fire escapes as shall constitute one fire escape for every hundred persons, calculated on the seating capacity of the hall.

"Sec. 4. All buildings hereafter erected in this State which shall come within the provisions of this law shall, upon or before their completion, be provided with fire escapes of the kind and number and in the manner set forth in this law, and any violation of this section shall constitute a misdemeanor on the part of the owner of such building, punishable as provided in section 5.

"Sec. 5. The owner, proprietor, lessee or manager of a building which, under the terms of this act, is required to have one or more fire escapes, who shall neglect or refuse for the period of sixty days after this law takes effect to comply with its provisions shall be deemed guilty of a misdemeanor, and on conviction, shall be fined not less than fifty nor more than two hundred dollars, or by imprisonment in the county or city jail not more than three months, or by both fine and imprisonment, and each day shall be deemed a separate offense.

"Sec. 6. All acts and parts of acts in conflict herewith are hereby repealed. It is made the duty of all

prosecuting attorneys in this State to institute and prosecute infractions of this law. Whenever it shall come to the knowledge of the chief of the fire department or commissioner of public buildings in any city, or the sheriff in any county, that any violation of this act has occurred, it shall be his duty to report the fact to the prosecuting attorney.''

It is conceded that the structure and use of the building brought the hotel within the terms of the foregoing law and that it was the duty of some one—either the owners in fee, or the lessees—to have attached to the building the exterior fire escape required by the statute. Before the lease the buildings on the premises were occupied as dwelling houses. For this reason there was no obligation on the defendants, prior to the execution of the lease, to provide the rope ladder escapes provided for by section 9036, Revised Statutes 1899, then in force. We think that the above section (9036) is by implication repealed by the law of 1901, but if it is still in force, and had the action been grounded on that section, it is clear that the defendants would not be liable, for under that section the duty to furnish the interior rope ladder escapes rests upon hotel-keepers, who in this instance were the Gillhams.

Section 9037, Revised Statutes 1899, to which appellant has referred in his brief, has no application to the case for the reason the buildings are not within the terms of that section. At the time of the fire the lessees were in the exclusive possession of the premises and they were under their exclusive control as lessees of the defendants. Zeigler v. Fallon, 28 Mo. App. 295; O'Neil v. Flanagan, 64 Mo. App. 87; Gibson v. Perry, 29 Mo. 1. c. 247. The use to which the buildings were put was for their benefit and not for the benefit of the defendants. At common law, if the premises were provided with the ordinary means of ingress and egress to all parts thereof, there was no obligation on either the owners in fee or the lesses to provide any sort of

exterior fire escape for the safety of the inmates or lodgers. Pauley v. Steam G. & L. Co., 131 N. Y. 90; Jones v. Granite Mills, 126 Mass. 84; Schmalzried v. White, 97 Mass. 36.

The language of the first section is: "It shall be the duty of the owner, proprietor, lessee or keeper," etc., to provide the exterior fire escapes. The object of the staute, as expressed in the title of the act, is "to protect and preserve human life." This duty rests upon some one of the class of persons pointed out by the first section and not upon all of such persons for they are mentioned disjunctively, not conjunctively. This is made more obvious by by section 5, of the act, which makes it a misdemeanor for the owner proprietor, lessee or manager of any building coming within the terms of the act to "neglect or refuse for the period of sixty days after his law takes effect" to attach the required fire escape. The persons who may be convicted under this section are named or described in the disjunctive, and for this reason no more of them, for instance the owner and lessee, could be convicted for the identical refusal or neglect to attach the fire escape. If such had been the intention of the Legislature, the owner, lessee, etc., would have been conjoined and not disjoined. So it appears to us that if the intention of the Legislature was to create a joint and several obligation on the owner, proprietor, lessee and keeper, to attach the fire escape, they would have been named conjunctively and we conclude that a joint and several obligation is not imposed. It seems to us that the purpose of the Legislature was to require the person, whose duty it was at common law to keep the premises in a safe condition, to provide the additional safeguard of an exterior fire escape to afford the occupants of the buildings designated an additional means of escape in case of fire. At common law the duty to keep the premises in a reasonably safe condition devolved upon the tenants or lessees. Ward v.

Fagin, 101 Mo. 669; Peterson v. Smart, 70 Mo. 34; Burnes v. Fuchs, 28 Mo. App. 279; Gordon v. Peltzer, 56 Mo. App. 599; City of Memphis v. Miller, 78 Mo. App. l. c. 72; Camp v. Rogers, 44 Conn. 291.

We find support for this view in the case of Lee v. Smith, 42 Ohio St. 459, wherein was construed the fire escape statute of Ohio (80 O. L. 188) which made it the duty of "any agent or owner of any factory, workshop, tenement house, inn or public house, more than two stories high, to provide a convenient exit from the upper stories in case of fire," etc. The facts were, the upper story of the building owned by the defendant was occupied by a lessee who conducted a factory therein. The plaintiff's intestate was an employee of the owner of the factory and lost her life by a fire in the premises. It was contended that the statute imposed the obligation to provide fire escapes on the owner of the building. In discussing the liability of the owner in fee, the court said: "The owner of a building may have no interest in the use to which it is applied. Hence, the owner of a building and the owner of the factory which is conducted in the building, may be different persons, and when this is so, the owner of the factory and not the owner in remainder or reversion of the building, is the person on whom the statute imposes the duty." Further on the court said: "The facts of this case illustrate the construction which should be placed on this statute, to-wit, that where the owner of the factory is one person and the owner of the building in which the factory is located is another, the former is the person on whom the duty named in the statute is enjoined.

"Again, in the absence of all legislation on the subject, the common law, founded on principles of right and justice, implies from the relation of master and servant, a duty on the former to provide reasonable means for the safety of the latter. Hence it is more reasonable to infer that the Legislature intended to impose the duty

required by this statute upon the owner of the factory who assumes the relation of master to those employed therein, and for whose safety the duty imposed by this statute is enjoined, than to hold that it was intended to impose the duty upon the owner in fee of the factory building, who may not sustain any relation to the employees in the factory from which the duty to provide for their safety could be implied, and who may not even know that his building is being used as a factory or workshop.''

In 1879 the State of Pennsylvania had a law on the same subject, the first section of which is similar to our Act of 1901, and on all fours with it in the clause designating the persons or class of persons who shall provide fire escapes.   It reads as follows:

''That all the following described buildings, within this Commonwealth, to-wit:   Every building used as a seminary, college, academy, hospital, asylum, or a hotel for the accommodation of the public, every storehouse, factory, manufactory, or workshop of any kind in which employees or operatives are usually employed at work in the third or any higher story, every tenement house or building in which rooms or floors are usually let to lodgers or families, and every public school building, when any of such buildings are three or more stories in height, shall be provided with a permanent, safe external means of escape therefrom in case of fire; and it shall be the duty of the owners or keepers of such hotels, of the owners, superintendents or managers of such seminaries, colleges, acadamies, hospitals, asylums, storehouses, factories, manufactories, or workshops, of the owners or landlords of such tenement houses, or their agents, and of the board of school directors of the proper school district, to provide and cause to be affixed to every such building such permanent fire escape.''

This statute was construed in the case of Schott v. Harvey, 105 Pa. St. 222, not to apply to the owner in fee who had leased the premises to a tenant who occu-

pied the same.   The court, through PAXSON, Justice, dis-
cussing the section, said:   "The duty is imposed upon
the owners, superintendents or managers of factories;
the owners or keepers of hotels; owners or landlords
of tenement houses, or their agents, etc.    Which of
these classes did the Legislature intend to make respon-
sible for a neglect to comply with the law?   If the ob-
ject was to impose a joint liability upon all, the act
would not have been framed in the disjunctive.    A
more reasonable construction would seem to be that it
was intended to reach the person in possession with
power to control, whether he be owner, superintendent
or manager.    However hard such a rule might be in the
case of a superintendent or manager, he could avoid the
responsibility by declining to act as such in a factory
where his principal refused to provide it with an 'ef-
fecient fire escape.' "    Further on it is said that the
meaning of the word "owner" depends in a great meas-
ure upon the subject-matter to which it applies and is
undoubtedly broad enough to cover a tenant for years,
a tenant for life and a remainderman in fee, as each
is an owner, and that where a Legislature used a term
of such varied meaning we must presume they intended
such a one as is in the possession and occupancy of the
premises, who has the immediate dominion and control
over it, and the manner of whose use of it makes a fire
escape necessary.

In the case of Sewell v. Moore, 166 Pa. St., 570, re-
lied upon by the appellant, the question of whether the
owner in fee or the tenant is liable under the Act of
1879, and subsequent acts amendatory thereof, was not
raised or discussed and does not in the least weaken the
authority of the Schott case.

The case of Landgraf v. Kuh, 188 Ill. 486, is cited
by appellant as supporting his contention that it was the
duty of the defendants, as owners in fee to provide the
external fire escape.   The Illinois statute is materially
different from ours in several particulars.   It does not

designate the person or class of persons whose duty it shall be to provide the fire escape. It provides that the supervisors and commissioners shall give to the owner or owners, trustees, lessees or occupants of any building coming within the terms of the statute, notice demanding that such owner, trustee, lessee or occupant or either of them, place or cause to be placed upon such building such fire escape. The building in which the fire occurred had fire escapes placed there by the owner but it was claimed they were insufficient. The building was seven stories high. Its various floors were arranged in lofts and offices and rented by the defendants, the owners in fee, to various tenants. Kittie Landgraf, the plaintiff's intestate, for whose death the suit was brought was in the employ of Stein & Co., who occupied a portion only of the fourth floor and conducted a factory therein. The court, in referring to the Schott and other like cases, said: ''The construction thus contended for may have been proper, as applied to the statutes under consideration where such construction was adopted, but can not be held to be the proper construction of the Illinois Act of 1885. Section 2, of the latter act, provides that 'all buildings of the number of stories used for the purposes set forth in section 1, of this act, which shall be hereafter erected in this State, shall, upon or before their completion, each be provided with fire escapes of the kind and number, and in the manner set forth in said section 1 of this act.' The fact that the buildings are to be provided with fire escapes 'upon or before their completion,' indicates that the duty of providing such fire escapes devolves upon the owners of the buildings. The fire escapes are required to be a part of the construction of the building itself. Moreover, the notice, commanding such fire escapes to be placed upon the building, is required by section 3 to be given to 'the owners, trustees, lessee, or occupant, or either of them.' The injunction being in the alternative, the notice may be given to the one as well

as to the other, and, therefore, to the owner as well as to the lessee or occupant. We are, therefore, of the opinion that the appellees were not relieved from liability in regard to the placing of fire escapes upon their building, because the fourth floor of the premises, where appellant's intestate was at work at the time of. her death, was in the possession and under the control of tenants of appellees, instead of being directly in the possession of appellees themselves.''

McCollouch v. Ayer, 96 Fed. 178, it was held that the power under the Illinois statute of determining upon whom rests the duty of providing a fire escape in any particular case was vested in the inspector, and until he had designated such person by the required notice, a court could not determine that either the owner, lessee or occupant was liable by reason of the failure to comply with the statute. It seems to us that this is a more reasonable construction than the one given in the Landgraf case. At any rate the case does not shake in the least the reasoning or authority of the Schott case.

The City Charter of Brooklyn, N. Y., provides that all buildings more than two stories high, occupied or built to be occupied as a factory, mill, etc., in which operatives are employed, shall be provided with fire escapes and that the owner or owners of any such building upon which any fire escapes may now be, or may hereafter be erected, shall keep the same in repair.

In Abrayan v. Manufacturers' N. Bk., 16 N. Y. 750, cited and relied on by appellant, it was held that it was the duty of the owner to provide the fire escapes, notwithstanding the premises were leased for a term of years and were in possession and under the control of the lessee. We can not see what other conclusion could have been arrived at from the very wording of the charter.

When the law requires a landlord to provide exterior fire escapes (as does the Act of 1901) on all buildings coming within its terms, thereafter erected,

it is plain his obligation to keep them in repair remains, although he may have let them to a tenant who is in possession. 2 Wood on Landlord and Tenant (2 Ed.), sec. 381, p. 841; McAlpin v. Powell, 70 N. Y. 126; Willy v. Mulledy, 78 N. Y. 310. And if the premises in question had been erected for a hotel after the Act of 1901 took effect, we have no doubt that defendants would have been obliged to attach and keep in repair the required fire escapes. Sec. 4, Act of 1901. But the buildings in question were not erected for a hotel but for private dwellings, and, were erected prior to the taking effect of the act. They were converted into a hotel by the Gillhams, the lessees, for their own use and profit. The plaintiff, when he was injured, was a guest of the lessee, occupying a room in their hotel and it was their duty to keep the premises in a reasonably safe condition to prevent injury or damage to him. They were in possession and had exclusive control of the premises and were, in a sense, the owners thereof, and we think on the facts of the case, the first section of the Act of 1901 imposed the duty on them to provide the fire escape. We are supported in this view by the cases of Lee v. Smith, and Schott v. Harvey, supra, the only cases to which we have been cited, or have been able to find that throw any light on the question in hand.

Our conclusion is that the learned circuit judge did not err in granting the motion for rehearing, and affirm the judgment. *Reyburn* and *Goode, JJ.,* concur.