PECOS & N. T. RY. CO. v. TWICHELL. †
(Court of Civil Appeals of Texas. Amarillo. Feb. 10, 1912. Rehearing Denied March 8, 1912.)

1. CARRIERS (§ 284*)—CARRIAGE OF PASSENGERS — ASSAULT BY FELLOW PASSENGERS — LIABILITY.

A passenger was assaulted by a fellow passenger. Before the train started, trainmen were informed that the fellow passenger had formerly attacked the passenger, and was dangerous. The conductor passed through the train several times, and made two trips specifically to observe the fellow passenger, who at all times acted in a peaceable manner. He occupied one coach and the passenger another, and the assault was sudden and in the absence of the trainmen. Held, that the carrier was not liable, since the trainmen did not fail to exercise the proper care to prevent the injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1125–1135, 1173, 1222; Dec. Dig. § 284.*]

2. CARRIERS (§ 280*)—CARRIAGE OF PASSENGERS—CARE REQUIRED.

A carrier is not an insurer of its passengers, and need not adopt all possible precautions, nor exercise the utmost diligence which human ingenuity can imagine, to avert an injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1106, 1109, 1117; Dec. Dig. § 280.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by W. D. Twichell against the Pecos & Northern Texas Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Madden, Trulove & Kimbrough, Terry, Cavin & Mills, F. M. Ryburn, and H. C. Pipkin, for appellant. Gustavus, Bowman & Jackson, for appellee.

PRESLER, J. Appellee brought this suit against appellant and one J. W. Childress, Jr., for damages, alleged to have resulted to him while a passenger on appellant's train from assault committed by the said Childress, another passenger. The latter having died, the cause was dismissed as to him and proceeded to trial before a jury against appellant, resulting in a verdict and judgment for appellee in the sum of $250, from which judgment appellant duly appeals, and in this court seeks revision of said judgment, and asks that this cause be reversed and rendered.

Appellant, by its sixth assignment, com-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

plains of the action of the court in refusing to charge the jury to return a verdict for the defendant, and contends that the facts proven are insufficient to authorize a recovery by plaintiff. We find the facts proven upon the trial of this case, as shown by the evidence, to be substantially as follows:

Twichell is a surveyor by profession, and resides in Amarillo. J. W. Childress, at the time in question and up until his death, resided in Texico, but had relatives in Amarillo. About the 10th of September, 1908, Childress, harboring some unknown grievance towards Twichell, attempted to assault or whip Twichell on the streets of Amarillo, which was unknown to the defendant company. On the morning of September 12, 1908, Twichell started with a surveying outfit from Amarillo via Texico, Roswell, and Pecos to Toyah, to do some surveying. Williams, a friend of Twichell, went with him to the depot to assist him off. After arriving at the depot, Childress came to the depot, walked along the side of the train, entered the depot, bought a ticket, got back on the train, taking a seat in the rear end of the first-class passenger coach. Twichell had boarded the train in the coach just in front of the one in which Childress took a seat. After Childress appeared at the depot, Twichell and Williams spoke to Ivy, a brakeman on the train, telling him about Childress' former attack, expressing the opinion that Childress intended to renew it, and asking something about the danger of such an attack being made upon the train. Just what passed between them is slightly in dispute. Twichell claims, also, to have spoken to the conductor. The conductor denies this. Williams claims to have spoken to the conductor, and the conductor acknowledges that Williams spoke to him, but claims that he replied that he could not be a bodyguard, or something to that effect. Both Twichell and Childress took passage on the train, and everything went smoothly until they had gone about 40 miles, somewhere in the neighborhood of Hereford. In the meantime, the conductor had passed up and down the train, taken up fares, and had made two trips through the train to see what Childress was doing, and found him each time quietly reading a paper as any other passenger would. Childress had walked up and down the aisle and looked at Twichell, but had done nothing. Twichell says he had passed twice, but at one time had looked at him, but done nothing, passing back into the rear coach. After leaving Canyon the conductor had worked his train, then walked back through the train to see what Childress was doing. Finding all behaving themselves as usual, he went to the front end of the train in the baggage car and began to sort his tickets, for the purpose of making a report at the end of his run. While the conductor was so engaged, Childress walked down the aisle, as if going to pass again, but, when he came opposite where Twichell was sitting, turned suddenly and began striking Twichell. Other passengers observing the fight and disadvantage that Twichell had in the fight parted them.

Plaintiff says that after he saw Childress come to the depot, go in the depot, come out, and get on the train, he did not think it a safe proposition for him to go on that train, and for that reason undertook to find the crew; that he then had a conversation with the brakeman, explaining to him that he believed that he was being followed by Childress, and wanted to know if he would be safe on that train, when the brakeman told him not to have any uneasiness, that nobody could hurt him, and for plaintiff to get back on the train and go ahead on the trip; that the brakeman assured plaintiff he could not be hurt on the train at all; that witness told the brakeman that Childress had, several days before that, undertaken to assault him on the streets of Amarillo, and plaintiff had avoided him and avoided the assault; that after the conversation with the brakeman the conductor came along, and that, in the presence of Williams, he explained the situation to him just as he had explained it to the brakeman, and told the conductor that Childress had attempted to assault him several days before, plaintiff avoiding the assault; that Childress was a dangerous man, etc.; that plaintiff was not armed, and asked the conductor if he would be safe on the train, when the conductor told plaintiff that nobody could hurt him on the train, and to go ahead and make the trip, and that plaintiff was all right; that thereafter he boarded the train; that the train was reasonably full of people, and left shortly after the conversation with the brakeman and conductor; that just before they reached Hereford, plaintiff was sitting in the coach two seats from the back, and had picked up something and was looking at it, a newspaper or something of the kind; that he at the time had his spectacles on, and all at once something caught hold of him on the right-hand side, jerked his spectacles down in his lap; that it was done instantly, and that he could not imagine what it was, and grabbed at his spectacles, and something struck him in the face, etc.; that the first thing plaintiff knew there were several blows came on his head, and he could not see what had happened; that the first thing he saw that he recognized was a big foot, as Childress was undertaking to kick him in the face; that it turned out to be Childress, after he got up; that, while striking plaintiff, Childress was standing behind the seat on which plaintiff was sitting and pummeling plaintiff over his back, not getting in front of plaintiff at all, so that plaintiff did not know what was happening to him; that Childress had passed through the car twice after it had left Amarillo, and before he made the assault, and plaintiff watched him both times when he passed through, coming facing him, and plaintiff

kept his eye right on Childress' eye all the time that Childress came facing him, and after Childress had passed him twice and looked at him, and not having done anything, plaintiff thought, perhaps, he was expecting more damage from Childress than Childress was prepared to deal; that Childress did not say anything to plaintiff, and that plaintiff did not say anything to Childress on either of the occasions when Childress passed through the cars; that plaintiff was fronting towards the front door and knows that Childress did not come from the front at the time he struck him; that plaintiff had not had any conversation with the conductor after the conductor had taken up the tickets; that no one of the crew was there present in the car at the time of the difficulty; that they searched the car for the conductor and brakeman immediately after the difficulty, but they were not there at that time; that Childress looked right at plaintiff when he passed up and down the train twice before he made the assault; that it was a good while after he had so passed up and down the aisle twice before he came back and made the assault; that after the assault the conductor came, took charge of Childress, told plaintiff to sit down, took Childress off at Hereford, and put him in the custody of the sheriff; that it is a fact that Mr. Childress' assault upon plaintiff was very abrupt and unexpected by plaintiff; that Childress came up from behind, without saying a word, and made the assault so abruptly that Rev. Erwin nor any one knew about it until Childress hit plaintiff; that there was no assault made until the spectacles were knocked off, and no signs or demonstration before that; that there was no noise; that the plaintiff did not hear any door open; that the assault came just like a "clap of thunder out of a clear sky," and that plaintiff did not know anything about it until the assault was made, and did not hear the slightest sound in the world behind him until the assault was made; that the assault made on plaintiff, and about which he testified in direct examination, was made something less than a week before this assault.

Miss Burson testified that she saw Childress come from the rear, passing down the aisle, passing her, and, when he arrived where Twichell was sitting, saw him turn quickly in the direction of Twichell and, without warning, assault Twichell with his fist, and strike him in the mouth; that she saw Childress pass up and down the aisle some three or four times prior to the time the assault was made, without making any attempt at an assault; that there was no railroad employé in the car at the time of the fight that the witness knew of; and that it is a fact that at the immediate time the fight began there was not any one of the railroad employés in the particular coach where the fight began, and was being carried on.

145 S.W.—21

[1] Conceding the doctrine contended for by appellee in his brief, and as announced in the authorities cited by him, to the effect that it is the duty of carriers of passengers to protect them, in so far as this can be done by the exercise of a high degree of care, from the violence and insults of other passengers, and that in this case appellant had notice that both Childress and Twichell were passengers on its train, and that Childress had made, shortly before, or attempted to make, an assault upon Twichell, that Childress bore the reputation of being a dangerous man (in the estimation of appellee and Williams), and that Twichell and his friend, Williams, were apprehensive that an assault might be made upon Twichell by Childress while they were passengers in appellant's train, we are still of the opinion that the facts, as shown by the evidence in this case, are insufficient to authorize a recovery by appellee, and that the court should have given the requested peremptory instruction to find for appellant. It is not contended by appellee that there was any act or indication of an act on the part of Childress, prior to making the assault, that showed any purpose on his part whatever to disturb appellee. On the contrary, the entire evidence with reference to this phase of the case shows that his manner and behavior was that of a quiet, peaceable passenger, leading even appellee to suppose that he was mistaken in apprehending trouble, and that there was no evidence of pending imminent or threatened attack by Childress on appellee up to and until the time of the assault, and that the conductor walked up and down the train several times in the course of his business, making at least two distinct trips purposely to see what the conduct of Childress was, finding in his conduct nothing that threatened or indicated trouble, and that the attack came at a time when the conductor, in the performance of his duties, was in another part of the train, as was also the brakeman, and that the attack was so sudden and unexpected, and was of so short duration in inflicting the injuries complained of, that we are unable to see how the same could have been prevented, under the circumstances and conditions, even had both brakeman and conductor been present and observing the parties at the time of its occurrence. And we are of the opinion that, where conditions are such, from the suddenness of the assault or otherwise, that the conductor exercising the care and vigilance required by law, could not have prevented it from occurring, the company should not be held liable. We think this case comes within the rule announced in the case of Putnam v. Railroad Co., 55 N. Y. 108, 14 Am. Rep. 190, because the appellee's injuries here resulted from a sudden, unlooked-for, and violent attack by another passenger, unknown to the employés in time for them to prevent it; and that it also comes within the case of Royston v. Railway Co., 67 Miss.

376, 7 South, 320, because the assault was made upon appellee while the conductor was absent, attending to his duties in another part of the train; ·and also within the case of Mullan v. Railway Co., 46 Minn. 474, 49 N. W. 249, because it ·was without warning, and the conductor exercised all power at his command to prevent further trouble when he arrived upon the scene and learned thereof. In the case of Hale v. Chesapeake & Ohio Ry. Co., 142 Ky. 835, 135 S. W. 398, the conductor of a railroad train, discovering in the coach for negroes a white man, who had been drinking, but who was ·then not disorderly or boisterous, called his attention to his being in the wrong car, and he, without objection, immediately left. Thereafter, while the .conductor was in the ladies' coach, and without notice to him or any other employé, the white passenger returned and insulted a negro passenger. It was held that there was no failure of the carrier in its duty to use, for the protection of its passengers, the utmost care and skill which prudent men are accustomed to use under similar circumstances, so as to make it liable, independent of the separate coach act.

We think that, notwithstanding the fact that Childress had, a day or two before, made an assault, or threatened to make one, upon appellee, and that he had the reputation of being a dangerous man, in the estimation of appellee and Williams, and that appellee was apprehensive of trouble from him on the occasion in question, and that the conductor and brakeman had notice of these facts, appellant's said agents and employés had the right, and it was their· duty also, to consider the manner and behavior of appellee on the occasion in question in determining whether or not any danger or injury by Childress to ·appellee apparently existed, and that, so long as said Childress, by his acts and manner, showed no indication to disturb appellee, but, on the contrary, appeared to be behaving himself as a passenger properly should, appellant's agents were not authorized to in any way restrain, disturb, or interfere with him; that they had no right under, .the law, upon such proper behavior, to refuse to receive him as a passenger, or to require him to go or remain in any particular part of said train, or to place him under any restraint whatever, but were under the legal duty to extend to him the courteous treatment legally required on the part of ·a carrier towards its passengers. Nor do we think that the notice of the matters referred to conveyed to appellant's employés, taken together with the behavior and manner of Childress on the occasion in question up to and prior to the sudden occurrence of the assault, required appellant. to incommode the other passengers in the train by keeping doors locked between the two coaches, or to station a guard over appellee and said Childress to prevent any possible attack; and it seems to us that, apart 'from these measures —that is, their refusing Childress transportation on the train, or keeping the doors locked between the coaches, or stationing a guard over appellee and Childress—said injury, occurring, as it did, in the sudden and .unexpected way, could not have been prevented by the exercise of even the highest degree of care required by law on the part of. appellant's employés.

[2] As said by the Supreme Court of Massachusetts, in the case of Glennen v. Boston Elevated Ry. Co., 207 Mass. 497, 93 N. E. 700, 32 L. R. A. (N. S.) 470: "A common carrier does not insure to its passengers immunity from harm. It is engaged in a public service which must be managed in such manner as to be practical and adapted to the needs of contemporary society, both as to convenience, expense, comfort, and rapidity. Hence it cannot be held responsible for the manifestations of 'lawlessness, heedlessness, impetuosity, or force which a high degree of prevision and sagacity could not reasonably be expected to forestall. Injury arising from the sporadic act of an individual, or the aggregate impulses of a throng, if outside the limits of conduct reasonably to be apprehended by one under a strong legal duty to be most keenly sensitive to guard against preventable wrongs, affords no ground of liability. The carrier is not bound to adopt all possible precautions, nor every conceivable safeguard, for the safety of passengers, nor to exercise the utmost diligence which human ingenuity can imagine to avert an injury. Simmons v. New Bedford Vineyard & Nantucket Steamboat Co., 97 Mass. 361, 93 Am. Dec. 99; Joy v. Winnisimmet Co., 114 Mass.· 63; O'Neil v. Lynn & Boston St. Ry. Co., 180· Mass. 576, 62 N. E. 983; Pitcher v. Old Colony St. Ry., 196 Mass. 69 [81 N. E. 876], 13 L. R. A. (N. S.) 481 [124 Am. St. Rep. 513, 12 Ann. Cas. 886]; Lyons v. Boston Elevated Ry. Co., 204 Mass. 227 [90 N. E. 419]; McCumber v. Boston Elevated Ry. [207 Mass. 559], 93 N. E. 698 [32 L. R. A. (N. S.) 475]. These principles are well settled and have been steadily adhered to; and it is not necessary to cite or review the many other cases by which they are illustrated."

We therefore conclude that the trial court erred as complained of by said ˙assignment, and that the requested peremptory instruction should have been given. In view of this conclusion, we deem it unnecessary to consider appellant's remaining assignments, and are of the opinion, because ·of the error as hereinbefore stated, this cause should be here reversed and rendered for appellant; and it is accordingly so ordered.