(Decided 4th January, 1887.)

---

LOWRY ALBERT *vs.* STATE OF MARYLAND, use of THOMAS RYAN.  SAME *vs.* SAME.

*Death occasioned by Negligence—Action for Damages—Infant Equitable plaintiff—Prochein ami—Removal of cause— Affidavit for Removal made by an Infant—Bill of Exceptions—Appeal—Ownership of Wharf—Liability of Owner of Wharf for Injury resulting from its Defective condition.*

Where an action is brought in the name of the State for the use of a minor for damages sustained by him by the death of his parents, it is too late after verdict, to object that the name of a *prochein ami* should have been inserted.

Albert *vs.* State, use of Ryan.

It is not however improper to insert the name of a *prochein ami* to the infant. In many cases it would be very desirable to do so, especially in those cases where the infant was too young to make an affidavit for removal.

An infant upwards of fifteen years of age, will be presumed to have intelligence and discretion sufficient to understand what a removal of his case means, and to make the suggestion and affidavit required.

A suggestion that "he believed that he could not have a fair and impartial trial," is a sufficient compliance with the constitutional provision:

A bill of exceptions must be signed and sealed by the Court below before it can be reviewed on appeal.

Special exceptions to the legal sufficiency of the evidence to support an instruction, signed by counsel, but not embodied in an exception signed and sealed by the Court below, cannot be considered on appeal.

If such exceptions have ever been considered by this Court, it was always where no objection was urged against them.

The proprietor of a farm bordering on navigable water, is not necessarily the owner of a wharf attached to it.

Where the owner of a wharf leases or rents it out, and at the time of such renting the wharf is in an unsafe condition for the use to which it is to be put, and the owner knew, or by the exercise of reasonable diligence, could have known of its condition, and one who is lawfully upon the wharf is injured in consequence of its condition, the owner is liable for the injury.

APPEALS from the Circuit Court for Howard County.

This action was brought in the Circuit Court for Baltimore County, against the appellant by the State of Maryland, for the "use of Thomas Ryan, infant child of the deceased Patrick Ryan," to recover damages resulting from the death of said Patrick, alleged to have been caused by the negligence of the defendant. On suggestion and affidavit of the minor or equitable plaintiff, the case was removed to the Circuit Court for Howard County.

*Exception.*—At the trial the plaintiff offered five prayers, the fifth of which is as follows :

5. If the verdict of the jury shall be for the plaintiff, under the instructions of the Court, then in assessing the damages they are to estimate the reasonable probabilities of the life of the deceased, Patrick Ryan, and give the equitable plaintiff such pecuniary damages, not only for past losses, but for such prospective pecuniary damages as the jury may find that he has suffered or will suffer as the direct consequence of the death of said Patrick Ryan ; these prospective damages to be estimated to the majority of the equitable plaintiff.

And the defendant offered the seven following prayers :

1. If the jury find the execution of the lease offered in evidence by the plaintiff, from Wm. J. Albert to Frank Debilius, and further find the execution of the will of Wm. J. Albert, offered in evidence, probated in April —, 1879, and that under said lease the said Debilius entered into possession of the premises, and remained in continuous possession and occupancy of the same to the 23rd of July, 1883, and exercised exclusive dominion over the same, then the plaintiff is not entitled to recover under the pleadings in this cause.

2. If the jury find the execution of the lease from Wm. J. Albert to Frank Debilius, offered in evidence by the plaintiff, and futher find the execution of the will of Wm. J. Albert, offered in evidence, and that under said lease the said Debilius entered into possession of the premises, and remained in continuous possession and occupancy of the said premises to 23rd of July, 1883, and had during all of said period exclusive control of the same, then the plaintiff, under the pleadings in this cause, is not entitled to recover, notwithstanding the jury may find that the defendant, in October or November, 1882, did agree with said Debilius, that the said Debilius should hold said premises after the expiration of said lease, and pay therefor

to said Albert the sum of ten dollars per day, for every day the same were in use, as testified to by said Debilius.

3. If the jury find that the bridge, where the accident happened, was at the time thereof in a reasonably safe condition for the purposes for which it was used, and that on the day of the accident an unusually large crowd assembled on said bridge, in consequence of the gate leading from said bridge to the wharf being kept closed, and that the accident was caused by the assembling of such unusually large crowd, and that the defendant had · and exercised no control or direction over the premises on that day, then he is not liable in this action.

4. Even if the Court should be of opinion that the arrangement testified to by the witness, Debilius, as having been made with the defendant in October or November, 1882, amounted in law to a new demise, still the plaintiff cannot recover unless the jury find from the evidence that at the time such arrangement was entered into, the bridge was in an unsafe and defective condition for the purpose for which it was erected and used, and that the defendant at that time knew that it was so unsafe and defective, and there is no evidence in the cause legally sufficient to show any such defective condition or knowledge thereof on the part of said defendant at that time.

5. That under the pleadings in this · cause there is no testimony legally sufficient to show any negligence or wrongful act on the part of the defendant for which he can be held responsible in law, and their verdict must be for the defendant.

6. Even if the jury should find for the plaintiff, they cannot allow any damages for the equitable plaintiff's bereavement for the loss of his father, or his wounded feelings, or the like, but can only compensate him for actual money loss as defined in the plaintiff's fifth prayer.

7. Even if the Court should be of opinion that the arrangement entered into between Debilius and Albert, in October or November, 1882, amounted to a new demise, and that at the time the premises were unsafe and defective, yet if they find that Patrick Ryan entered upon said premises at the invitation and as the customer or guest of said Debilius, or his sub-lessee, and was killed while so there, then unless the defendant was guilty of some fraud, he is not liable for such accident.

The Court (MILLER and JONES, J.,) rejected all the plaintiff's prayers except the fifth and all the defendant's prayers except the sixth, and granted the fifth prayer of the plaintiff and the sixth prayer of the defendant, and gave its own instruction as follows:

That if the jury shall find from the evidence that William J. Albert was, in his life-time, the owner of the place and premises known as "Holly Grove" or "Tivoli," situated on the Patapsco River, in Baltimore County, and leased the same to Frank Debilius, by the lease offered in evidence, dated the 23rd of May, 1878, for "an excursion point and summer resort," and afterwards died, leaving a will, probated the 17th of April, 1879, by which he devised the said premises to the defendant, and he has ever since been the owner of the same as such devisee. And if the jury shall further find from the evidence, that at the date of the aforesaid lease there had been built on said premises two bridges or piers, and a wharf, as described by the witnesses, and that these were used for the purpose of affording access to and from the land for excursionists and visitors coming to said place in boats by water. And if they shall further find that said Debilius, as tenant under said lease, entered into possession and used the premises as an excursion point or summer resort, under the terms of said lease; and shall further find, that in October or November, 1882, during the last year of said tenancy, and after the season of summer excursions for that year had

ended, the defendant went to the said Debilius and asked him what he was going to do with the place, and that the said Debilius told him that he did not want the place any longer, as he was making nothing at it; that defendant then asked him if he could not get some society to take it; to which Debilius replied, that he did not think he could, and then told the defendant that he would keep the place and take care of it, and give him, the defendant, $10 per day for every day it was used, and the defendant agreed to this arrangement, and that the same was to go into effect in the following summer, or after the expiration of said lease, and that the said Debilius took charge of the place, and was in possession thereof under this verbal arrangement on the 23rd of July, 1883, when the disaster described by the witnesses occurred. And if the jury shall further find from the evidence, that at the time the said new verbal agreement was made, one of the said bridges or piers had become unsafe and in a dangerous condition by reason of the stringers or timbers thereof, or some of them, having become rotten with dry rot, and continued in such rotten and unsafe condition down to the time of the disaster aforesaid; and if the jury shall further find from the evidence, that the defendant, at the time said verbal arrangement was made, knew, or by the exercise of reasonable diligence could have known, of the rotten and unsafe condition of said bridge and failed to repair the same; and if they further find that on the 23rd of July, 1883, there was an excursion to the said place by people from Baltimore going to the same in a barge by water, and among said excursionists was Patrick Ryan, the father of the equitable plaintiff, and while he and others were passing over the said bridge or pier to reach the boat which was to take them back to Baltimore, a portion of the said bridge, to the extent of thirty or forty feet, suddenly gave way by reason of the defective and rotten condition of the timbers thereof, whereby the said Patrick,

with others, were precipitated into the water and drowned, and that said drowning was without any fault, negligence, or want of ordinary care on the part of the deceased; and if the jury shall further find that Thomas Ryan, the equitable plaintiff, was the son of the said Patrick, and was, at the time, a minor, under the age of twenty-one years, then the plaintiff is entitled to recover.

The defendant excepted; and after the verdict he filed a motion in arrest of judgment, and a motion for a new trial, and later a motion to remand the record of the case, *non obstante veredicto*, to the Circuit Court for Baltimore County, whence it had been transmitted, for the reason that the Circuit Court for Howard County, had no jurisdiction of the cause, inasmuch as there was no proper and legal suggestion, and no legal affidavit supporting the same, made in the Circuit Court for Baltimore County, as would authorize said Circuit Court to transmit the record of the cause to the Circuit Court for Howard County, for trial. All of these motions were overruled by the Court, and judgment was entered upon the verdict. The defendant appealed. He also appealed from the order of the Court, overruling the motion to remand the record of the case to the Circuit Court for Baltimore County.

The defendant filed certain special exceptions which are sufficiently noticed in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, IRVING, and BRYAN, J.

*Talbot J. Albert,* and *Wm. Pinkney Whyte,* for the appellant.

*Jno. J. Donaldson,* and *D. G. McIntosh,* for the appellee.

STONE, J., delivered the opinion of the Court.

This was an action brought by a minor for damages sustained by him by the death of his parents, who were drowned at a place called Tivoli, and whose death was caused, as he alleges, by the negligence of the defendant, the owner of the wharf.

Before we determine the law of this case, it will be proper to dispose of one or two technical objections that have been raised against the proceedings.

One of the objections urged is that the suit should have been brought by the next friend of the infant equitable plaintiff.

This objection seems to be sufficiently answered by the terms of the statute under which this suit is brought, at least where the objection comes in the shape of a motion in arrest of judgment. The statute provides in a case like the present that the suit shall be brought in the name of the State for the use of the party aggrieved. This suit has been so brought, and certainly after verdict it is too late to urge the objection that the name of a next friend should have been inserted. The only object that could have been obtained by inserting the name of the next friend of the infant, was security for the costs to the defendant if the plaintiff failed in his suit. The next friend would have had no authority to receive the amount of the judgment, and his appearance in a case like this answers no good purpose except to be security for costs. But while that is undoubtedly so, we must not be understood to decide that it would be improper to insert the name of a *prochein ami* to the infant in a case like the present. In many instances it would be very desirable to do so. Especially in those cases where the infant was too young to make an affidavit for removal.

Another objection urged is that the infant could not make the suggestion and affidavit for removal.

The infant in this case was upwards of fifteen years of age and would be presumed at that age to have under-

standing and discretion sufficient to understand what a removal of his case meant, and to make the oath required. In the light of our present Constitution, the right of removal is regarded as a very valuable one.    In asking for it, the infant did not waive any rights that he had, but merely asserted and demanded his legal right.    What an adult *prochein ami* could certainly have done for him, an infant who had arrived at fifteen years of age could do for himself.    It might present a different question if the equitable plaintiff was of such tender years, that no presumption could arise of sufficient intelligence to understand the nature of the right claimed or of an oath.

Another objection is that the affiant did not pursue in his suggestion for removal the exact words of the Constitution in this, that the suggestion was that "he believed that he could not have a fair and impartial trial," while the constitutional provision is that "he cannot have a fair and impartial trial."

The difference is' altogether immaterial.    The party making the suggestion is required to verify it by his affidavit.    This affidavit is that the matters in the suggestion contained are true, *"to the best of his (the affiant's) knowledge and belief."*

Taking the suggestion in the exact words prescribed by the Constitution, and the affidavit together, and they mean nothing more than that the party swears that to the best of his *knowledge and belief* he cannot have a fair and impartial trial in the Court from which he desires the removal. The suggestion and affidavit in this case mean and assert precisely the same.    In this case the word *belief* is inserted twice where once would have been sufficient, and is clearly only surplusage.

Another objection remains to be disposed of.    The defendant has filed in the record certain special exceptions, as he terms them, to the Court's instruction and to certain prayers of the plaintiff for want of legally sufficient evi-

dence to support them. As these prayers were rejected by the Court, and the plaintiff has not appealed, these rejected prayers are not before this Court.

Nor can we notice these so-called special exceptions as applicable to the Court's instruction, because they are not properly speaking exceptions at all. The fourth rule of the Court of Appeals, provides in the latter part of it as follows: "Nor shall any question arise in the Court of Appeals as to the insufficiency of evidence to support any *instruction actually granted,* unless it appear that such question was distinctly made to and decided by the Court below."

The only way that a question can be made to appear to this Court, to have been made to and decided by the Court below, is by way of exception. By the uniform and continuous practice in this State, a bill of exceptions must be *signed* and sealed by the Court below, before we can review it. In general the bill of exceptions itself must plainly show the point decided by the lower Court. We are particularly prohibited from examining the legal sufficiency of the evidence to support a *granted prayer* or instruction by the rule just referred to, unless it distinctly appears that such question was made to and decided by the Court below. It can only be made so to appear to us by a certificate under the hand and seal of the Judge who tried the case below.

But in this case there is no exception, properly speaking, to the instruction of the Court for *want of the legal sufficiency of the evidence* to support it. There are papers filed in the case called special exceptions on that point, but they are not signed and sealed by the Court, but by the attorneys. From aught that appears in this record the legal sufficiency of the evidence may never have been brought to the attention of the Judge, who tried the case. A paper filed in a case by the attorney unsigned and unsealed by the Judge, cannot have the force and

Albert *vs.* State, use of Ryan.

effect of an exception, although the parties may call it so. The special exception for want of evidence must be *within* the bill of exceptions and not out of it.

If these so-called special exceptions that are not certified to as by the lower Court, have ever been considered by this Court, it was always in cases where no objection was urged against them. In the case at bar the objection is distinctly made and urged.

The correctness of the law of the Court's instruction is open for review upon the exception taken to it by the defendant, but not the legal sufficiency of the evidence upon which it was based.

The end and object of this fourth rule, and the Act of 1825, upon which it was founded, were to restrict this Court to the decision of the questions decided below. It was intended to prevent surprise, and consequent injustice in the Appellate Court.

Had the special exceptions of the defendant to the Court's instruction for want of legally sufficient evidence, been included *in the* exception, they would have been before us. As they now stand, the correctness of the instruction upon that ground is not before us, but its correctness as a legal proposition will be considered.

The defendant's counsel has argued with much force that there is no legally sufficient proof of the ownership of the wharf by the defendant. The proof of ownership of this wharf by the defendant is vital to the case of the plaintiff, as he is charged in that capacity only. We may say here that because the defendant was the owner of "Sparrow point" farm, it does not necessarily follow that he was the owner of the wharf. There are many summer resorts in the waters of this State, as well as farms, where the land owners are not the owners of the wharves attached. These latter are often built and owned by steamboat companies and others, and the proprietors of the land have no interest in them except as a means of

ingress and egress to and from the lands. The Act of 1862, has nothing to do with this case. The proprietor of the land bordering on the navigable waters has the *right* to make these improvements, but it is a right that he can sell or give away.

But we are precluded from a decision on that question for the reason that it is not presented to us properly in the record. Nor do any of the prayers offered by the defendant raise the question of the legal sufficiency of evidence, except the fifth which was rejected. But this prayer is restricted to the question of negligence or wrongful act. But we are not prepared to say that the case should have been taken away from the jury, for that would have been the effect of granting the prayer.

In deciding the law of this case it will not be necessary to refer to the prayers either of the plaintiff or defendant further than we have done, as they were all rejected and the Court's own instruction was given. If that instruction covered the whole law of the case. When we say that all the prayers were rejected, we should except the fifth prayer of plaintiff, and sixth of defendant. The defendant does not of course appeal from the granting of his own prayer, and we do not understand the defendant as making any serious contention against the plaintiff's fifth prayer, and we may therefore confine ourselves to the Court's instruction.

That instruction substantially laid down the law to be, and so instructed the jury, that if they found that the defendant was the owner of the wharf, and that he rented it out to a tenant, and *that at the time of the renting*, the wharf was unsafe, and *defendant knew, or by the exercise of reasonable diligence* could have known, of its unsafe condition, and that the accident happened in consequence of such condition, the plaintiff was entitled to recover.

Of the correctness of the rule so laid down, provided the jury found the facts, we think there can be no reasonable

Albert *vs.* State, use of Ryan.

doubt. The law is very tersely laid down as far back as the case of *Roswell vs. Prior*, in 12 *Modern R.*, 639, where the Court say : "This action is well brought against the erector, for before his assignment over he was liable for all consequential damages; and it shall not be in his power to discharge himself by granting it over." There are many cases to the same effect, but it will be sufficient for us to cite the case of *Owings vs. Jones*, 9 *Md.*, 108, where the Court adopt this rule laid down in 56 *E. C. L. R.*, 784 :

"Where the owner leases premises which are a nuisance, or must in the nature of things become so by their user, and receives rent, then, whether, in or out of possession he is liable."

A wharf, furnishing the only mode of ingress and egress to a summer resort, where crowds were invited to come, if in an unsafe and dangerous condition is certainly a nuisance of the worst character. It will not do for the owner, knowing its condition, or having by the exercise of any reasonable care the means of knowning it, to rent it out and receive rent for it, but escape all liability when the crash comes. He who solicits and invites the public to his resorts, must have them in a reasonably safe condition, and not in a condition to risk the lives and limbs of his visitors.

This question has been much discussed in the Courts of New York. *Swords vs. Edgar*, 59 *N. Y.*, 28, was a case very much like the present. There the Court decided that if the owner of a pier had leased it, and at the time of the demise, and delivery of posession to the lessee, it was in an unsafe and defective condition, and afterwards while in the possession of the lessee, an injury happens to one lawfully on the pier, the lessor is liable. This decision has not been overruled in that State. The case of *Edwards vs. N. Y. and H. R. R. Co.*, 98 *N. Y.*, 245, is very different from *Swords vs. Edgar*, and in commenting upon

the latter case the Court says, "It is one where liability was imposed upon the lessor of a public dock, upon the ground that he had suffered a nuisance in his dock before the demise, and he was held liable on that ground. And the ground of nuisance is the only one upon which that decision can stand. There are similar cases in New England and England. A dock is regarded as a species of public highway, and the owner who suffers a nuisance to be created and continued upon his dock, remains liable upon the ground of nuisance." The case in 98 *N. Y.*, was this: The defendant rented a hall for the purpose of giving in it a pedestrian exhibition. A gallery broke down during the exhibition and injured the plaintiff. The Court held that in the absence of evidence tending to show that the defendant knew, or had reason to suppose, that there was some defect in the gallery, or that it was of insufficient strength to hold the number of people who could be contained therein, or that it would be used in such a way as to endanger its security, the plaintiff could not recover. The gallery had been divided into boxes, which were filled with chairs and tables, and had been used for festivals, &c. But the lessee had removed the chairs and tables, and a turbulent crowd had filled the gallery, and in stamping and beating time to the music, they broke it down. There was no evidence whatever that the lessor knew, or could have known, that it was to be so used, and he was held not liable.

We cannot perceive any inconsistency in this case with *Swords vs. Edgar.* We have referred to them at some length because they were pressed in the argument.

But in any event, we think the case of *Owings vs. Jones*, 9 *Md.*, 108, a controlling authority, based as we think it is upon sound reason, and we think it may be held as well settled in this State, that where the owner of a wharf leases or rents it out, and at the time of such renting the wharf was in an unsafe condition for the use that the lessor knew

it was to be put, and that the owner knew or by the exercise of reasonable diligence could have known of its condition, and that one who was lawfully on the wharf, and was injured in consequence of its condition, that the owner is liable.

This was substantially the instruction of the Court, and the judgment must be affirmed.

*Judgment affirmed.*

(Decided 4th January, 1887.)