(No. 6588. April 29, 1939.)

ROBERT B. OLIN and LUCIE S. OLIN, Husband and Wife, Appellants, v. S. G. HONSTEAD, Respondent.

[91 Pac. (2d) 380.]

Richards & Haga, J. F. Martin, Hamer H. Budge, Delana & Delana, Scatterday & Scatterday, and Creed W. Mullins, for Appellants.

Hawley & Worthwine and A. L. Anderson, for Respondent.

MORGAN, J.—This action was commenced by appellants against respondent and others to recover damages for personal injuries to Lucie S. Olin, caused by a fire which occurred in a room in a building owned by him. The room was leased by respondent and his wife to E. L. Drake, and a balcony therein was sublet by Drake to A. E. Varnadoe and Grace Brown, wife of Gus Brown. Respondent demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action against him. The demurrer was sustained and, appellants declining to further plead, judgment of dismissal in favor of respondent was entered. This appeal is from the judgment. Drake, Varnadoe and Grace Brown and her husband were also made parties defendant, but the appeal concerns only the case sought to be stated in the complaint against respondent.

It is alleged in the complaint that during the spring and summer of 1935 respondent, preparatory to erecting a building in Nampa, entered into negotiations with Drake, a prospective tenant, and together they planned and designed a room in it which was to be leased, used and occupied by Drake for the purpose of conducting a general drug store business, and other business approved by respondent as lessor; also they designed, as a portion of the room, a balcony to be used as an office room for Drake; that respondent applied for and obtained from the city engineer of Nampa a permit to

erect the building and represented to him that the room was to be occupied and used as a general drug store and the balcony was to be used solely as an office therein. However, it does not appear what authority, if any, the city engineer had, nor whether or not the permit would have been granted had the representation not been made.

The room had a frontage of 23 feet and extended back from the street a distance of 100 feet; the balcony was constructed in the rear portion of the room and was 10 feet above the floor. It was approximately 23 feet wide and extended 30 feet from the rear of the building toward the front, and was constructed by respondent at the instance, request and with the approval of Drake. The balcony was reached by a narrow stairway along the southeasterly wall on the inside of the room and there was no other means of ingress or egress to and from it. There were no openings in the side walls of the balcony and the only openings in the rear wall thereof were three windows, each 2½ feet high and 3 feet wide, the sills thereof being 52 inches above the floor of the balcony and the tops thereof being 17 inches below the ceiling. The sashes were hung on hinges from the top and swung upward and inward and the bottoms of the windows were 14 feet from the ground with no ladder or other means of escape from the balcony, in case of fire, except said windows and the narrow stairway on the inside of the room. In the rear of the building, and immediately back of and below the balcony and windows, was an area 20 feet wide, paved with concrete and extending to the alley.

The complaint further shows that after the building was completed respondent and his wife leased the room to Drake for a term of ten years. The lease contained a provision that Drake should not sublet the premises, nor any part thereof, without respondent's consent and that respondent should, at all times, have the right of ingress and egress to and from the building for the purpose of viewing, inspecting, repairing and improving it. After the execution of the lease Drake, with the consent and approval of respondent, sublet the balcony to Varnadoe and Mrs. Brown for the purpose of conducting a beauty shop and school.

At the time of subletting the balcony to Varnadoe and Mrs. Brown, and at the time they entered upon the premises and the occupancy thereof, and at all times thereafter, all the defendants knew the manner of construction and condition of the balcony and particularly knew of the means of ingress thereto and egress therefrom. They all knew the room was to be used, and was used, for general drug store purposes, and contained a large stock of drugs, chemicals, medicines, and other wares and goods usually sold in such a business and, particularly, articles of an explosive and inflammable character. All the defendants knew, when the balcony was sublet, and at all times thereafter, that the operation of the beauty shop and school on the balcony would and did necessitate the presence of numerous operators and students and other persons thereon and that many persons would and did congregate in the drug store, in the course of the business thereof, on the main floor of the building, during business hours, and that they would and did occupy the balcony in connection with the business conducted and to be conducted there.

Shortly before October 23, 1935, Drake opened the drug store in the room leased by him, and Varnadoe and Mrs. Brown opened the beauty shop and school on the balcony and he and they continued to conduct their businesses, in their respective locations, with the full knowledge and approval of respondent and of each other.

It further appears from the complaint that in 1936, as was well known to each of the defendants, immediately preceding the Fourth of July, and on the first of July, 1937, and for a considerable time prior thereto, there were and had been stored, displayed and offered for sale and sold in the front part, and particularly in the front windows of the drug store, fireworks and firecrackers such as are generally stored, displayed and exposed for sale and sold prior to and on the Fourth of July; that said fireworks and firecrackers were highly inflammable and explosive in character and were being looked at and handled by the public generally and by children in particular.

That July 1, 1937, at about 4:30 P. M. appellant, Lucie S. Olin, at the invitation and with the knowledge, permission and consent of all the defendants, entered the drug store and

went upon the balcony for the purpose of soliciting beauty operators who were employed in the beauty shop and school, to purchase uniforms and for the further purpose of receiving beauty treatment; the balcony was occupied by approximately thirty-five persons and the drug store was also crowded; that while Mrs. Olin was on the balcony a fire started in the drug store and immediately ignited the display of fireworks, above mentioned, and also ignited other inflammable and explosive materials in the drug store and thereby caused an explosion; that as a result thereof said store room, and particularly the balcony, instantly filled with gas, flames and intense heat, making it imperative that all persons in the drug store, and particularly on the balcony, escape immediately therefrom in order to save their lives; that the explosion and fire immediately blocked the stairway and rendered it unusable as a means of escape from the balcony, and the lower portion of the room was so filled with gas, flames and heat from the explosion and fire that persons on the balcony would have been unable to escape down the stairway even if it had been usable; that the only means of escape from the balcony, at the time of and immediately after the explosion, were the openings, or windows, in the rear of the balcony; that the explosion and fire caused a panic among the persons on the balcony and the openings were filled with those attempting to climb through them and jump from them; that as the only means of saving her life Mrs. Olin finally succeeded in reaching one of the openings and climbed through and jumped from it to the concrete area below; that she was severely burned and painfully and permanently injured by fire and by inhaling smoke and gas, and also received injuries to her feet, knees and shoulders by jumping from the window to the concrete.

Negligence is alleged on the part of all the defendants in the reckless and careless use and occupation of the store room and balcony and in failure to use due and proper precaution for safe storage, display and sale of the fireworks being stored, displayed and sold on the premises. It is also alleged that the store room and balcony, maintained as they were, constituted a nuisance.

Appellants' theory, if we correctly understand it, is that respondent is liable for damages to Mrs. Olin because he leased the premises in a condition which constituted a nuisance and resulted in her injuries, and because of the negligent manner in which his tenant and the sub-tenants conducted their businesses, with his knowledge and acquiescence.

It is said in 16 R. C. L. 1069, sec. 589:

"Notwithstanding the general application of the rule of *caveat emptor* above stated as exempting the landlord from liability for injuries arising from defects in the premises existing at the time of the lease, there are a number of decisions which hold that where the property is leased for public or semipublic purposes, and at the time is not safe for the purposes intended, or when there is a dangerous condition on the premises which is in the nature of a nuisance, and the owner knew, or by the exercise of reasonable diligence ought to have known, of such conditions, he cannot evade liability to a third person for damages resulting from such conditions, but it is his duty to make such property reasonably safe for the purposes intended, or to discontinue the conditions which are in the nature of a nuisance, as the case may be. . . . . " (See, also, *Copley v. Balle,* 9 Kan. App. 46, 60 Pac. 656; *Colorado Mtg. & Inv. Co. v. Giacomini,* 55 Colo. 540, 136 Pac. 1039, L. R. A. 1915B, 364; *Turner v. Kent,* 134 Kan. 574, 7 Pac. (2d) 513; *Albert v. State,* 66 Md. 325, 7 Atl. 697, 59 Am. Rep. 159; *Swords v. Edgar,* 59 N. Y. 28, 17 Am. Rep. 295; *Carson v. Godley,* 26 Pa. St. 111, 67 Am. Dec. 404; *Ahern v. Steele,* 115 N. Y. 203, 22 N. E. 193, 12 Am. St. 778, 5 L. R. A. 449; *Fraser v. Kruger,* 298 Fed. 693.)

An examination of the authorities shows that for a landlord to be liable for damages to an invitee of his tenant, caused by a nuisance on the premises, it must have existed, and have been of such a nature, *at the time the tenancy commenced,* as to render the premises unfit and unsafe for the purpose for which they were let.

It does not appear from the complaint that when the room was leased it was not a safe and proper place in which to conduct a drug store; nor does it appear therefrom that the balcony was not a safe and proper place to

conduct a beauty shop and school. The stairway, while referred to as "narrow," does not appear to have been inadequate to meet the demands made upon it arising out of the uses for which the balcony was sublet. The danger arose from adding the stock of fireworks to the stock of drugs. That was a detail in the conduct of the tenant's business over which the landlord had no control.

"A landlord is not deemed the principal of his tenant nor responsible for his torts, active or negligent, or for his failure to keep the premises in repair, and on the same principle he is not liable to a person who as servant, licensee, or guest of the tenant is lawfully on the premises, and injured by a source of danger created or maintained by the tenant without the license or consent of the landlord. . . . . " (16 R. C. L. 1070, sec. 590.)

(See, also, *Langabaugh v. Anderson*, 68 Ohio St. 131, 67 N. E. 286, 62 A. L. R. 948; Tiffany on Landlord and Tenant, 674, sec. 101; *West v. Inman*, 137 Ga. 822, 74 S. E. 527, Ann. Cas. 1913B, 276, 39 L. R. A., N. S., 744.)

■ While, as above stated, the lease contained the usual provision that the lessors have the right of ingress and egress to and from the building for the purpose of viewing, inspecting, repairing and improving it, that clause, inserted in the instrument for the purpose of permitting them to protect their reversionary estate in the property, in no way obligated them, nor either of them, to make repairs or improvements, nor does it appear from the complaint any were necessary to be made in order to render or keep the premises in a safe condition for the usual and ordinary uses for which they were leased.

■ The building was not equipped with a fire escape. Our statute, I. C. A., sec. 38–1401, requires that public halls, office buildings, school buildings, factories or other structures over two stories high, be provided with fire escapes. The height of the building involved herein is not stated in the complaint and there is nothing therein to indicate it was more than one story. If the city of Nampa has an ordinance with respect to fire escapes it has not been pleaded.

 As a general rule, in the absence of contract, statute or ordinance requiring it, a landlord owes no duty to provide his building with fire escapes. There may be exceptions to this common-law rule but, if so, this case is not within any of them. The Court of Civil Appeals of Texas in *Baugh v. McCleskey,* 292 S. W. 950, 952, said:

"It is well settled by the decisions in many states, to which decisions we must look to determine the common law, that at common law there was no duty imposed upon an owner of a building to provide any other means of escape from a fire than the ordinary halls, stairs, doors, and windows. *Schmalzried v. White,* 97 Tenn. 36, 36 S. W. 393, 32 L. R. A. 782; *Jones v. Granite Mills,* 126 Mass. 84, 30 Am. Rep. 661; *Arms v. Ayer,* 192 Ill. 601, 61 N. E. 851, 85 Am. St. 357, 58 L. R. A. 277; *Pauley v. Steam Gauge & Lantern Co.,* 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194; *West v. Inman,* 137 Ga. 822, 74 S. E. 527, Ann. Cas. 1913B, 276, 39 L. R. A., N. S., 744; *Weeks v. McNulty,* 101 Tenn. 495, 48 S. W. 809, 70 Am. St. 693, 43 L. R. A. 185."

(See, also, *Yall v. Snow,* 201 Mo. 511, 100 S. W. 1, 119 Am. St. 781, 9 Ann. Cas. 1161, 10 L. R. A., N. S., 177; *Johnson v. Snow,* 102 Mo. App. 233, 76 S. W. 675; *Commonwealth v. Madison,* 269 Ky. 571, 108 S. W. (2d) 519.)

An examination of the foregoing cases and others shows that common law did not require the owner of a building to equip it with fire escapes, or with any other means of egress for use in case of fire, or other emergency, than ordinary doors, windows, halls and stairs.

 It is alleged in the complaint:

"that said balcony, planned, designed and constructed as hereinabove set forth, was not provided or equipped with ordinary means of escape and egress by stairs, halls, doorways or windows; that said balcony was not constructed or provided or equipped with the ordinary or reasonable means of escape or egress by windows, doorways, hallways or stairways; . . . . "

Just what ordinary means of escape and egress were omitted from the balcony, or what windows, doorways, hallways or stairways were not constructed or provided for the store room

and balcony, and which are usually and ordinarily made appurtenant to like store rooms and balconies, does not appear. The above quoted allegation is a statement of conclusions, not of ultimate facts. When the sufficiency of a pleading is questioned by general demurrer, the pleader's conclusions cannot be made to take the place of indispensable facts. (*Ollis v. Orr*, 6 Ida. 474, 56 Pac. 162; *Abrams v. Jones*, 35 Ida. 532, 207 Pac. 724; *Mole v. Payne*, 39 Ida. 247, 227 Pac. 23; *Whiffin v. Union Pacific R. Co., ante*, p. 141, 89 Pac. (2d) 540.

The law does not prohibit the erection of buildings as this one was erected, nor has it sought to regulate, restrict or prohibit the use of them as this one was used. The drugstore business is not prohibited in such a place as the one here under consideration was conducted, and the same is true of the beauty shop and school. There is no basis in any statute, or ordinance, to support a holding that, at the time the lease was made and occupancy of the building commenced, the premises, or any part thereof was a nuisance; nor did the manner in which the businesses were conducted, when they were established, constitute negligence. Fireworks were not added to the stock of goods in the building until long after the lease was executed and the period of tenancy had commenced. At the time of the commencement of the leasehold the explosion, which caused appellant's injury, could not have been foreseen so as to be guarded against. After the period of tenancy commenced the landlord had no power, and owed no duty, to supervise his tenant's business to the end that it not be conducted in such a way as to be dangerous.

The judgment appealed from is affirmed. Costs to respondent.

Givens, J., Acting C. J., and Lee, D. J., concur.

Ailshie, C. J., and Budge, J., deeming themselves to be disqualified, did not sit with the court at the hearing nor participate in the decision.

KOELSCH, D. J.—I sincerely regret that I cannot concur in the opinion written by Justice Morgan. In my judgment the facts alleged in the complaint, if sustained by evidence,

would make a case that should be submitted to a jury for its finding whether the balcony, constructed as described and let and demised for the purpose of conducting a beauty shop and school, was so negligently constructed as to constitute a menace and danger to the lives and limbs of those who used it. It seems to me that the construction of this balcony, with a narrow stairway as the only means of ingress to and egress from the same, and the letting of the same for the purpose of conducting a business thereon, presents, as an issue of fact to be determined by a jury, the question whether the landlord was guilty of negligence.

I cannot subscribe to the statement in the majority opinion that it does not "appear from the complaint that the balcony was not a safe and proper place to conduct a beauty shop and school." That statement is, in effect, a pronouncement that as a matter of law a balcony constructed and used as the one described was constructed and used, is a safe and proper place on which to conduct a business of the kind conducted on this balcony.

The allegation in the complaint "that said balcony planned, designed and constructed as hereinbefore set forth, was not provided or equipped with ordinary means of escape and egress by stairs, halls, doorways or windows," etc., is criticised by the majority opinion as a "statement of conclusions, not of ultimate facts." Nevertheless, it seems to me that it is a sufficient pleading under which to admit evidence, *pro* and *con*, as to whether balconies of this kind are ordinarily equipped with means of escape other than or in addition to the means afforded by the "narrow stairway," and, if so, whether in the minds of the jury the absence or lack of such other means in this instance constituted negligence.

The standard of care required by the law is the conduct of a reasonably prudent person; and "the best way to get a just determination as to whether a man or woman acted 'as a reasonably prudent person would have acted under like circumstances,' is to submit the question to a jury, and get the benefit of the combined opinions of twelve persons on it. It is only when there can be but one possible answer reasonably made to that question, that a trial judge, or an appellate

court, should assume to decide it." (*Adkins v. Zalasky,* 59 Ida. 292, 81 Pac. (2d) 1090.)

Nor can I subscribe to the holding by the majority that the landlord is not liable because the fireworks were not added to the business in the building until after the lease was executed and the tenancy had commenced, and that he is not liable for the further reason that "after the period of tenancy commenced the landlord had no power, and owed no duty, to supervise his tenants' business to the end that it not be conducted in such a way as to be dangerous."

However correct as a statement of law that the landlord has no power to supervise his tenants' business may be, it is beside the question here. It hardly requires the citation of authorities to the proposition that if the negligence of one tort-feasor concurs with the negligence of another to produce a single result, which would not have happened but for such concurrence, both tort-feasors are liable though their acts or omissions of negligence were independent of each other. (*Woodland v. Portneuf Marsh Valley Irr. Co.,* 26 Ida. 789, 146 Pac. 1106; 62 C. J. 1133; *McDonald v. Robinson et al.,* 207 Iowa, 1293, 224 N. W. 820, 62 A. L. R. 1419. See, also, *Brose v. Twin Falls Land & Water Co. et al.,* 24 Ida. 266, 133 Pac. 673, 46 L. R. A., N. S., 1187.)

Hence it is immaterial whether the concurring acts or omissions of negligence originated at the same time.

True, all the authorities agree that a landlord is not liable for injuries resulting from a nuisance or defect in the premises arising after the commencement of the tenancy. But in the case at bar the defective and dangerous balcony, that is, the negligence of the landlord, did exist at and prior to the demise of the premises by him.

Can it be said as a matter of law that the faulty design of the balcony was not a contributing cause of the injuries sustained by the plaintiff? Is not that a question for the jury?

I submit that the demurrer ought to be overruled.

Holden, J., concurs in the foregoing dissenting opinion of Koelsch, D. J., for reasons therein stated and other reasons.