671 P.2d 1112

Gail KELLER, Plaintiff-Appellant,

v.

HOLIDAY INNS, INC., a Tennessee corporation, Great Western Investment Co., and Winegardner & Hammons, Inc., Defendants-Respondents.

Gene BURMAN and Joan Keller Burman, husband and wife, Plaintiffs-Appellants,

v.

HOLIDAY INNS, INC., a Tennessee corporation, Great Western Investment Co., and Winegardner & Hammons, Inc., Defendants-Respondents.

No. 14270.

Court of Appeals of Idaho.

Nov. 4, 1983.

Charles L. Hay, Elam, Burke, Evans, Boyd & Koontz, Boise, for plaintiff-appellant.

Patrick D. Furey, Imhoff & Lynch, Chartered, Boise, for defendants-respondents.

BURNETT, Judge.

We are asked to decide whether a property owner who rents space in a building to a business lessee, and who authorizes the lessee to bring unsafe appliances upon the property, may be liable to the lessee's employees for harm caused by the appliances. The principal parties claiming injury are Gail Keller and her sister, Joan Keller Burman. When the alleged injuries occurred, the Keller sisters were employed by the proprietor of a gift shop located upon leased space within the Holiday Inn of Boise. The appliances in question were large iron security gates fabricated and placed on the premises by the gift shop proprietor. The gates surrounded the gift shop when it was closed; but when the gift shop was open, the gates were folded, moved on wheels, and stored elsewhere in the motel. The gates were known to be unstable and prone to collapse. Each of the Keller sisters has alleged that she was physically injured by the security gates while attempting to move them to or from their place of storage.

The Keller sisters sued Holiday Inns, Inc., and certain affiliated entities.[1] The Holiday Inn group moved for summary judgment against the sisters' claims. The group contended that the motel, as a lessor, owed no duty of care to the lessee's employees; and that, even if such a duty were owed, it would not extend to the known risk presented by the unsafe security gates. The district court granted the motion. We reverse.

Part I of this opinion contains an overview of negligence liability. We identify the elements of negligence liability and the general grounds upon which one person may be said to owe a duty of care to another. In Part II we examine the duties imposed upon land possessors to protect entrants upon the property from dangerous conditions and from the harmful activities of third persons. We adopt the modern view that a land possessor's duty is not entirely excused, but liability may be limited, when an invitee encounters a known risk on the property. In Part III, we apply this view to the instant case, focusing upon the known danger and the upon motel's status as a lessor. We conclude that Holiday Inn owed the Keller sisters a duty of care and that the extent of liability, if any, flowing from alleged breach of this duty must be resolved at trial upon remand.

I

The elements of a cause of action for negligence are familiar. They consist of a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; a breach of the duty; a causal connection between the defendant's conduct and the plaintiff's injuries; and actual loss or damage flowing from those injuries. *E.g., Brizendine v. Nampa & Meridian Irr. Dist.,* 97 Idaho 580, 583, 548 P.2d 80, 83 (1976). When these elements are established, the defendant is subject to liability. Actual liability will be imposed if the defendant has no defense to the plaintiff's

---

1. The Holiday Inn group filed a third party complaint, seeking contribution and indemnity, against the sisters' former employer. The em- ployer is not a party to this appeal and for that reason does not appear in the caption of our opinion.

cause of action. RESTATEMENT (SECOND) OF TORTS § 5 (1965) [hereinafter cited as Second Restatement].

Our initial focus is upon the question of duty. Duty is a requirement that one conduct himself in a particular manner with respect to a risk of harm. Second Restatement § 4. The scope of the duty is defined by the nature of the risk and by the persons endangered by it. A risk may arise from a number of sources, including the actor's own conduct, the conduct of others, or a condition on the actor's property.

■ Every actor has a general duty to use due care not to injure others by his own conduct. E.g., Harper v. Hoffman, 95 Idaho 933, 523 P.2d 536 (1974). In such cases the actor's conduct has brought him into close contact with the risk and the persons endangered. However, an actor's duty to protect others from the conduct of third parties or from conditions on property is more limited. The scope of duty in such cases is measured by the knowledge which the actor had or should have had concerning the risk, and the control which the actor should or could have exercised over the source of the risk and the persons endangered. Where the risk is created by the conduct of third parties, the criterion of control is emphasized. Harper & Kime, The Duty to Control the Conduct of Another, 43 YALE L.J. 886 (1934). In such cases, the courts customarily inquire into the existence of a special relationship between the actor and the third party or between the actor and the persons endangered. E.g., Joyner v. Jones, 97 Idaho 647, 551 P.2d 602 (1976); Davis v. Potter, 51 Idaho 81, 2 P.2d 318 (1931). Conversely, in cases involving conditions on land, the knowledge criterion often is emphasized. Keeton, Personal Injuries Resulting from Open and Obvious Conditions, 100 U.PA.L.REV. 629 (1952). The courts have treated a land possessor's superior knowledge of dangerous conditions on his property as the basis for imposing upon him a duty to protect others entering the property. E.g., Tommerup v. Albertson's, Inc., 101 Idaho 1, 3–4, 607 P.2d 1055, 1058–59 (1980).

The criteria of knowledge and control often are closely related. In a case involving unsafe conduct by a third party, one's special relationship to the third party or to the persons endangered may provide both superior knowledge of the potential harm and a way to control it. Similarly, in a case involving conditions on land, the landowner's possession of the property may afford him superior knowledge of a danger as well as the ability to control it. However, the question of duty becomes more nettlesome when the criteria of knowledge and the control are not coextensive. The courts confront this problem when the landowner could control the unsafe conduct of a third party on his land, or an unsafe condition on the land, but the landowner's knowledge of the danger is not superior to that of other persons entering the land. We now examine the landowner's duty in those circumstances.

II

We recognize at the outset that there is no single duty owed by a land possessor to all persons entering his land. The law traditionally has imposed varying duties, depending upon the nature of the visit and the entrants' expectations of what they will encounter on the property.

A

■ A person who enters the property of another with passive permission or as a mere social guest traditionally has been held to understand that he must take the land as the possessor uses it. This entrant, classified by the law as a licensee, is expected to be alert and to protect himself from the risks he encounters. Accordingly, the duty owed to a licensee with respect to such risks is narrowly restricted. The possessor is required simply to share his knowledge of dangerous conditions or dangerous activities with the licensee. When such a warning has been given, the possessor's knowledge is no longer superior to that of the licensee, and the possessor's duty extends no farther. Second Restatement §§ 342–343A, and § 343 comment b. Of course, the possessor

must avoid willful and wanton injury to the licensee. But ordinary negligence allowing an unsafe condition or activity on the property is insufficient, by itself, to impose liability to a licensee. *Wilson v. Bogert,* 81 Idaho 535, 347 P.2d 341 (1959).

█ However, the law has adopted a more protective view toward an invitee. An invitee is a person who enters upon the land for a purpose connected with the business conducted there, or for a visit which reasonably may be said to confer or to anticipate a tangible benefit to the possessor. *Wilson v. Bogert, supra.* The invitee is not required simply to take the property as the possessor uses it. Rather, the invitee is entitled to assume that the property has been made safe for him to enter. Accordingly, the possessor has not only a duty to disclose dangerous conditions, but also the duty to exercise reasonable affirmative care to keep the premises safe for an invitee. *Feeny v. Hanson,* 84 Idaho 236, 371 P.2d 15 (1962).

We acknowledge that this traditional distinction between the duties owed to licensees and invitees has been the subject of persistent criticism. *E.g.,* W. PROSSER, HANDBOOK OF THE LAW OF TORTS 398–99 (4th ed. 1971); Shindurling, *The Law of Premises Liability—Is a Reasonable Standard of Care Unreasonable?* 11 IDAHO L.REV. 67 (1976). A few jurisdictions have abandoned or limited the rigid distinctions among duties owed to different categories of entrants upon land. *E.g., Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1 (1975). However, our Supreme Court on several recent occasions has declined invitations to do so. *Huyck v. Hecla Mining Co.,* 101 Idaho 299, 612 P.2d 142 (1980); *Springer v. Pearson,* 96 Idaho 477, 531 P.2d 567 (1975); *Mooney v. Robinson,* 93 Idaho 676, 471 P.2d 63 (1970).

█ Consequently, we deem ourselves constrained to accept the distinction between a licensee and an invitee, and to identify the relevant category in this case. Holiday Inn rented space in its building to

the gift shop proprietor for a business purpose. The employment of personnel by the gift shop proprietor clearly was within that purpose. Consequently, we hold that these employees were invitees. Our inquiry is narrowed to the duty owed by the land possessor to an invitee.

**B**

The broad duty owed an invitee has not always been fully understood. In many cases, an invitee's voluntary encounter with a known danger has been characterized not only as a defense to the possessor's liability for breach of a duty owed to the invitee, but also as an exception to the duty itself. Thus, in *Splinter v. City of Nampa,* 70 Idaho 287, 215 P.2d 999 (1950), the Idaho Supreme Court upheld judgment against an invitee injured by an obvious risk which he had voluntarily encountered. The Court did not specify whether the property owner's nonliability was due to absence of a duty to protect the invitee, or to the presence of a defense against breach of that duty. In *Alsup v. Saratoga Hotel, Inc.,* 71 Idaho 229, 229 P.2d 985 (1951), the Supreme Court held both that an invitee assumes ordinary risks of harm upon the property, and that the owner owes the invitee no duty to obviate dangers from known or obvious risks. The Supreme Court reiterated in later cases that an owner has no duty to protect an invitee from open and obvious dangers. *Baker v. Barlow,* 94 Idaho 712, 496 P.2d 949 (1972); *Tafoya v. Fleming,* 94 Idaho 3, 479 P.2d 483 (1971). *Cf. Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 518 P.2d 1194 (1974) and *Giles v. Montgomery Ward Co.,* 94 Idaho 484, 491 P.2d 1256 (1971) (owner need warn only against hidden or concealed dangers).

The original RESTATEMENT OF TORTS (1934) [hereinafter cited as First Restatement] took a similar approach. Sections 340 and 342, using the term "business visitor" to describe an invitee, recited that the possessor of land owed the business visitor a duty to keep the premises in a reasonably safe and suitable condition, but that he was not required to protect the

business visitor against known or obvious dangers. In essence, this rule reduced the invitee to a licensee—entitling him only to knowledge of the hazard and not to any protection from it—in the case of a known danger.

The notion expressed in the First Restatement and in Idaho cases cited above, that an invitee's knowledge of a risk entirely excuses the land possessor's duty of care, has been severely disapproved by legal scholars. See articles cited in Annot., 35 A.L.R.3d 230 (1971). This notion also has come under fire from two perspectives by other courts. First, it has been criticized for blurring the distinction between a land possessor's duty of care and a defense which may limit his liability for breach of that duty. E.g., Adam Dante Corp. v. Sharpe, 483 S.W.2d 452 (Tex.1972); Hanson v. Town & Country Shopping Center, 259 Iowa 542, 144 N.W.2d 870 (1966). Secondly, the courts have observed that, in some circumstances, an invitee might reasonably encounter a risk which was obvious. An example is furnished in Otts v. Brough, 90 Idaho 124, 409 P.2d 95 (1965). There our Supreme Court recited the traditional rule, that a possessor owed no duty to an invitee with respect to an obvious danger; but the Court said that a jury question remained as to whether the invitee's conduct was reasonable because his attention to the danger may have been distracted by other activity on the premises.

Thus, the traditional rule, that a land possessor's duty is entirely excused by a known or obvious danger, has become discredited. The Second Restatement now contains enumerations of duty which do not make express exceptions for known or obvious dangers. These duties are stated with respect to risks created by third persons on the property and to risks posed by conditions on the property. Both forms of duty are germane to the instant case. The unsafe security gates may be viewed either as the products of an unsafe activity conducted on the motel premises by the gift shop proprietor, or as an unsafe condition on the motel property itself.

A land possessor's duty to protect invitees from the activities of third parties on the premises is set forth in Second Restatement § 318:

If the actor permits a third person to use land ... in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from ... so conducting himself as to create an unreasonable risk of bodily harm to [others] if the actor

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control.

The Second Restatement, at § 344, also declares that a possessor of land who holds it open for the public to enter for business purposes is subject to liability to members of the public for physical harm caused by the negligent acts of third persons. Comment d to this section states that the property owner "is not an insurer of the safety of such visitors against the acts of third persons.... He is, however, under a duty to exercise reasonable care to give them protection." This duty extends to situations when the land possessor knows or has reason to know that the acts of a third person, including an invitee, are occurring, or are about to occur; and that these acts represent a risk to other invitees upon the property. Second Restatement § 344 comment f.

A land possessor's duty to protect invitees from dangerous conditions on the premises is explained at § 343:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The known or obvious nature of the danger does not wholly excuse the land possessor's duty of care to invitees under the Second Restatement. Rather, such knowledge or obviousness may limit liability for breach of the duty. Section 343A declares that a "possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

## C

In deciding the scope of duty applicable to the present case, we must choose between the traditional notion, that a known or obvious danger excuses a land possessor's duty, and the modern view that knowledge or obviousness of a danger does not excuse duty but may limit liability. This choice is framed by two recent decisions of our Supreme Court. In one case, the Court adopted the Second Restatement's formulation of limited liability for a known or obvious risk, and the exception where the land possessor "should anticipate the harm despite such knowledge or obviousness." *See Ryals v. Broadbent Development Co.,* 98 Idaho 392, 565 P.2d 982 (1977) (plurality opinion), *overruled on other grounds, Seppi v. Betty,* 99 Idaho 186, 579 P.2d 683 (1978). In *Ryals* the Court upheld a jury instruction taken almost verbatim from § 343A, noting that this section "has been widely accepted since its adoption . . . and we find no error." 98 Idaho at 396, 565 P.2d at 986. However, the Second Restatement and *Ryals* were not mentioned by the Court's subsequent opinion in *Tommerup v. Albertson's, Inc.,* 101 Idaho 1, 607 P.2d 1055 (1980). In *Tommerup* the Court, upholding a judgment against a grocery store customer who had been injured on the premises, reverted without explanation to the traditional rule. The Court said that a proprietor's duty to keep premises safe for an invitee did not extend to dangers known to the invitee or which, by the exercise of ordinary care, should have been observed by the invitee. 101 Idaho at 4–5, 607 P.2d at 1058–59.

In our view, a known or obvious danger should be treated as a limitation upon liability, rather than as an excuse of duty. This view recognizes the difference between existence of a duty on one hand and the availability of a defense for breach of that duty, on the other hand. Our view also brings the land possessor's duty toward invitees into greater conformity with the scope of his knowledge and the extent of his control over the danger. Under this view, a duty to protect invitees arises when the possessor knows or should know about a danger posed on his land by a condition or a third party within his control. The duty is not restricted to situations where the land possessor's knowledge is superior to that of his invitees.

There is also a statutory reason in Idaho to treat an invitee's knowledge or the obviousness of a danger as a limitation of liability rather than as an excuse of duty. Since 1971, Idaho has been a comparative negligence state. I.C. § 6–801 provides that the plaintiff's contributory negligence does not bar recovery in a negligence action, so long as his negligence is not as great as the negligence of the person against whom recovery is sought. Rather, any damages awarded to the plaintiff are reduced in proportion to the amount of causal negligence attributable to him.

Prior to the advent of comparative negligence, contributory negligence was an absolute bar to recovery. Thus, it made little difference whether a known or obvious condition excused a land possessor's duty to an invitee, or simply insulated the possessor from liability for any breach of such duty. In either event, the injured invitee could not recover. But under the comparative negligence system, the difference is profound. If duty is not excused by a known or obvious danger, the injured invitee might recover, albeit in a diminished amount, if

his negligence in encountering the risk is found to be less than the land possessor's negligence in allowing the dangerous condition or activity on his property. In contrast, if the invitee's voluntary encounter with a known or obvious danger were deemed to excuse the landowner's duty, then there would be no negligence to compare—and, therefore, no recovery. The effect would be to resurrect contributory negligence as an absolute bar to recovery in cases involving a land possessor's liability to invitees.

The Oregon Court of Appeals recently expressed a similar view concerning the comparative negligence laws of that state. In *Woolston v. Wells,* 63 Or.App. 7, 663 P.2d 408 (1983), the court held that an invitee's negligence in confronting a known danger must be weighed against the owner's negligence in maintaining the danger on his premises.[2]

■ Accordingly, we adopt the modern view. We hold that the obviousness, or an invitee's knowledge, of a dangerous activity or condition does not excuse the land possessor's duty of care toward the invitee. Such knowledge or the obviousness of the danger may be considered in evaluating the sufficiency of protective measures undertaken by the possessor; and it may be considered in evaluating a defense of contributory negligence, which may limit the land possessor's liability. If this defense is raised, the invitee's negligence in encountering the danger should be compared to the land possessor's negligence in failing to protect the invitee against it.

### D

As noted, Second Restatement § 343A limits the liability of a land possessor for a breach of duty to protect an invitee from unsafe conduct of third persons or unsafe conditions, on the land. The section is itself subject to a limitation where the land possessor "should anticipate the harm despite such knowledge or obviousness." Comment f to § 343A explains that a possessor may have "reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Illustration 5 to comment f suggests that this limitation may arise from the invitee's employment:

A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C.

This employment limitation has been recognized by the courts. In *Scales v. St. Louis-San Francisco Ry. Co.,* 2 Kan.App.2d 491, 582 P.2d 300 (1978), an employee of a grain elevator company was injured on premises leased by the company from a railroad. The injury occurred when the employee caught his foot in an auger located under the railroad tracks. The Kansas appellate court observed that the injured employee's work required him to be near the auger, and that the railroad could have anticipated the harm regardless of the invitee's knowledge that the auger was dangerous. Similarly, in *Napoli v. Hellenic Lines,* 536 F.2d 505 (2d Cir.1976), a longshoreman

---

**2.** The Oregon court observed that if Second Restatement § 343A prescribed an exception to duty, rather than a limitation of liability, it would conflict with the comparative negligence scheme. This observation may have been prompted by occasionally imprecise references to limitations of duty and to limitations of liability in comments to the Second Restatement. *See, e.g.,* comment b to § 343. We acknowledge the ambiguities of language in some of the comments. The authors may not have had comparative negligence in mind when drafting these comments. However, as we read the controlling "black letter" rules of the Second Restatement, we deem it clear that all of these rules are intended to distinguish between a lack of duty and a limitation of liability. *See* Second Restatement §§ 4 and 5. In any event, even if the Oregon court's concern in *Woolston* were well-founded, it simply would underscore the importance of recognizing the distinction between lack of duty and limitation of liability, in articulating the law for Idaho.

was injured when he slipped from snow-covered plywood boards which had been placed, unsecured, over drums to be unloaded from a ship. The Second Circuit, incorporating the Second Restatement into maritime law, said that the limitation to § 343A was applicable where the injured party's assigned tasks as an employee required his unavoidable exposure to the risk.

██ Just as a known or obvious danger does not entirely excuse a land possessor's duty to an invitee, neither does the employment limitation to § 343A wholly excuse the invitee's duty to exercise reasonable caution for his own safety. Rather, the invitee's employment may be considered in weighing the reasonableness of his voluntary encounter with the risk. As noted in *Napoli:*

> Thus, it might be argued that if this was the only place for [the longshoreman] to work and carry out his job, the vessel might reasonably anticipate that he would use it despite its obvious danger, since the only alternatives would be to leave his job or face trouble for delaying the work. Should the jury be persuaded by this argument and find that the ship owner was negligent in not correcting the open and obvious danger but that the plaintiff was contributorily negligent, it would apply the doctrine of comparative negligence to reduce the ship owner's liability proportionately.

536 F.2d at 509. *See also Jong Hee Park v. United States Lines, Inc.,* 50 Md.App. 389, 439 A.2d 10 (1982).

### III

We now return to the instant case. This is an appeal from a summary judgment. A motion for summary judgment may be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). The district court entered summary judgment for the Holiday Inn group, holding that they owed no duty to the Keller sisters with respect to the security gates.

### A

The facts framing the question of duty are not in dispute. The gift shop space was leased from month to month. The security gates were brought upon the motel premises by the gift shop operator with full knowledge and approval of Holiday Inn's manager. When the gift shop was open for business, Holiday permitted the gates to be stored behind double doors in a hallway connecting guest rooms to the motel lobby. As the gift shop opened and closed, it was necessary to move the security gates to and from their storage site in the hallway. The Keller sisters moved the gates as part of their employment duties, occasionally receiving help from Holiday's employees. Keys to the gates were kept at the motel's front desk. Holiday's management, the gift shop operator, and the Keller sisters all were aware that the gates were unstable. The gates had collapsed numerous times, striking motel employees and other persons during a period of several months, before the accidents involving the Keller sisters occurred.

██ A party resisting summary judgment is entitled to the benefit of all reasonable inferences from the facts. *E.g., Intermountain Business Forms v. Shepard Business Forms,* 96 Idaho 538, 531 P.2d 1183 (1975). We believe the trier of fact in this case reasonably could infer Holiday's knowledge of the following: that the Keller sisters were employed at the gift shop, that their duties included moving the security gates, and that the gates were unsafe. In addition, the trier of fact reasonably could infer that Holiday was in a position to control the movement and storage of the gates, and to control the month-to-month existence of the gift shop itself.

██ These undisputed facts, and the reasonable inferences which might be drawn from them, are sufficient to make a prima facie showing that Holiday owed a duty of care to the Keller sisters as invitees. This duty may be recognized regardless of whether the gates are viewed as products of an activity by the former employer, or as

conditions on the motel premises. If the gates are treated as products of a third party's conduct, a trier of fact, applying Second Restatement § 318, *supra,* reasonably could find that Holiday's management was "present" on the motel premises, that Holiday knew or had reason to know that it could control the gift shop proprietor's use of the security gates, and that Holiday knew or should have known that exercise of such control was necessary to prevent harm to invitees on the premises. Conversely, if the gates are viewed as a condition on the property, the duty arises under Second Restatement § 343, *supra.* A trier of fact applying this section reasonably could find that Holiday knew of the danger posed to invitees by the gates; that the risk of harm was unreasonable; and that the Keller sisters would not protect themselves against the risk because their jobs required them to move the gates.

■ Assuming the existence of a duty, the next question is whether a limitation of liability has been demonstrated as a matter of law. To establish contributory negligence by the Keller sisters, it must appear that the sisters acted unreasonably by encountering the known risk. We believe a genuine issue exists on this point. Moreover, even if contributory negligence were deemed established, such negligence would not necessarily preclude recovery but would be weighed against any negligence by Holiday. The process of comparing negligence turns closely upon the facts developed at trial, and ordinarily is inappropriate for summary judgment. *E.g., Robinson v. Westover,* 101 Idaho 766, 620 P.2d 1096 (1980); *McKinley v. Fanning,* 100 Idaho 189, 595 P.2d 1084 (1979).

Of course, this weighing process might be obviated if a plaintiff's negligence so dominated a case, and was so unforeseeable, that as a matter of law it severed the proximate, causal link between the defendant's alleged negligence and the injury claimed. *See, e.g., Joyner v. Jones,* 97 Idaho 647, 551 P.2d 602 (1976). However, we believe a trier of fact reasonably could find that the Keller sisters' conduct in this case was foreseeable.

We conclude that Holiday should not have been granted summary judgment on the ground that the risk was known or obvious.

**B**

■ Holiday also has contended that the landlord-tenant relationship between the motel and the gift shop proprietor vitiated any duty the motel otherwise might have owed to the Keller sisters as invitees. Second Restatement § 355 declares that "a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession." However, this section is entitled "Conditions Arising After Lessor Transfers Possession: General Rule." As the heading indicates, the rule applies only where the tenant actually takes possession of the leased premises and becomes, in effect, the land possessor in place of the owner. In the present case, possession may have passed from Holiday Inn to the gift shop operator with respect to the area enclosed by the gift shop itself. However, the injuries at issue here allegedly occurred while the security gates were being moved to or from their place of storage at another location on Holiday's property. As noted previously, the storage location was in a hallway connecting motel guest rooms with the main lobby. It is clear that Holiday, merely by allowing the security gates to be moved and stored there during gift shop operating hours, did not displace its own possession and control over the hallway.

Moreover, § 355 expresses only a general rule which is subject to numerous limitations set forth in the ensuing §§ 357–62. Section 359 establishes an exception where the property is leased for a purpose which involves the admission of the public to the premises. Sections 360–61 provide further exceptions where the lessee is allowed to use parts of the property which are retained under the lessor's control. *See also* W. PROSSER, HANDBOOK OF THE LAW OF TORTS, § 63, at 405–08 (4th ed. 1971).

These exceptions plainly apply to the hallway where the security gates were kept.

Holiday's knowledge, approval and substantial control of the security gates, combined with its retained control over the area where the security gates were moved and stored, distinguish this case from others in which a lessor has been held not liable for injury caused by dangers created on the property by his tenant. In *Olin v. Honstead*, 60 Idaho 211, 91 P.2d 380 (1939), our Supreme Court upheld a determination that the owner of a commercial building was not liable to patrons of a leased beauty parlor for injuries caused by a fire which was begun, or was accelerated, by fireworks at a drug store in another leased portion of the same building. There was no showing that the property owner had been aware of the fireworks or of the hazard they posed in the leased drug store. The Supreme Court said that the landlord had no duty to alleviate a danger created or maintained by a tenant "without the license or consent of the landlord. * * *" 60 Idaho at 219, 91 P.2d at 383, *quoting from* 16 R.C.L. 1070, § 590. In contrast, we have noted that the security gates in this case were placed in the motel with Holiday's full knowledge and approval, and were subject to substantial control by Holiday.

Our attention also has been invited to *Sunde v. Tollett*, 2 Wash.App. 640, 469 P.2d 212 (1970). In that case, a tenant of a mobile home park put a fuel storage tank on an unstable wooden frame. The frame collapsed while the fuel tank was being filled, injuring an employee of a fuel company. The court noted that the mobile home park owner had not approved the type of oil tank or stand which could be used, had not issued any orders regarding it, and had asserted no control over it. *Sunde* is thus distinguishable upon its facts from the instant case. We further note that the Washington appellate court which decided *Sunde* has adopted the Second Restatement in other cases involving the duties of land possessors toward persons entering their property. *E.g., Golding v. United Homes Corp.,* 6 Wash.App. 707, 495 P.2d 1040 (1972); *Strong v. Seattle Stevedore Co.,* 1 Wash.App. 898, 466 P.2d 545 (1970).

We conclude that Holiday Inn's status as a lessor did not insulate it from any duty owed to the Keller sisters. The district court erred by granting summary judgment on this basis.

The judgment of the district court is reversed. The cause is remanded for further proceedings consistent with this opinion. Costs to appellants. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.